# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

## Case Number: 11-20152-CIV-ALTONAGA-BROWN

GUSTAVO ABELLA, pro-se

   Plaintiff,

TOWN OF MIAMI LAKES
COUNCILWOMAN NANCY SIMON,
MIAMI DADE COUNTY
OFFICER JUAN F. RODRIGUEZ, Individually
OFFICER HECTOR VALLS, Individually
OFFICER BENJAMIN RIVERA, Individually
OFFICER  RAYMOND DEL VALLE, Individually
OFFICER A. SALAZAR, Individually
OFFICER RICHARD BAEZ, Individually
JOHN DOE OFFICERS, Individually
MAJOR FRANK BOCANEGRA, Individually, and
Ex-POLICE CHIEF ROBERT PARKER, Individually

   Defendants,

_____/

FILED by _____ D.C.

FEB 0 9 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

## **AMENDED COMPLAINT**

The Plaintiff, pro-se, sues Defendants and alleges:

## **INTRODUCTORY STATEMENT**

1

This is an action for damages sustained by Plaintiff Gustavo Abella against Town of Miami Lakes Councilwoman Nancy Simon in her individual capacity as elected official of the Town of Miami Lakes, and against Miami Dade County, Florida, employee, Police Officers Rodriguez, Valls, Rivera, Del Valle, Salazar, Baez, John Does Officers of the Miami Dade Police Department, Major of the Police assigned to the Town of Miami Lakes, Frank Bocanegra, in his individual capacity as Town Commander, ex Miami Dade Police Director Robert Parker.

Councilwoman Nancy Simon harassed, abused her power as elected official, manipulated Law Enforcement Police Officers against Plaintiff as retribution for Plaintiff's exercise of his First Amendment right to free speech when on February 2007 Plaintiff spoke against an issue on the Agenda regarding an Ordinance on Signs, to be displayed on the swales of the right of way in the streets of the Town of Miami Lakes.   Plaintiff had a sign in back his truck. The sign read "Councilmember Nancy Simon wants to pollute Miami Lakes with signs". Vendors who were in favor of this issue were the Realtors that have commercial offices in the Town of Miami Lakes.  Also, Plaintiff's wife filed on June 2007 with the Florida Department of Business and Professional Regulations (DBPR), Real Estate Section, selling properties after her Real Estate License was nulled and void

on September 2004 and Nancy Simon was found guilty and was fined for receiving in the year 2005 more than $28,000.00 in commission.

Plaintiff also brings this lawsuit against Defendant Nancy Simon for intentional infliction of emotional distress and malicious prosecution. Plaintiff brings this suit against all the Police Officers mentioned before including Major Frank Bocanegra, as Town Commander of the Police assigned to the Town of Miami Lakes, as the immediate supervisory officer responsible for the conduct, training and supervision of police officers under his charge. Defendant Bocanegra was deliberately negligent to the complaints that Plaintiff, his former Attorney Joseph Glick and Plaintiff's wife brought to Defendant Bocanegra's attention. Defendant Bocanegra failed to properly trained police officers and to adequately discipline and supervise in regards to their propensity to commit violation of civil rights, abuse of power, retaliation, intimidation, harassment, and stalking, with the purpose to cause humiliation, embarrassment, injury to their reputations and health and suffered shame, mental anguish and hurt feelings. Plaintiff also brings this lawsuit against the ex Director of the Miami Dade Police Department, Robert Parker, for negligence, for not putting a stop to the abuse of power, intimidation, harassment, stalking; and for not giving Plaintiff and his family equal protection as anyone else.

3

## JURISDICTION

1. This lawsuit states claims that arise under the First Amendment of the United States Constitution protected through 42 U.S.C. § 1983 and the laws of the State of Florida.

2. Venue is placed in the United States District Court for the Southern District of Florida because it is where all parties reside and where the events complained of occurred.

## PARTIES

3. At all times material hereto GUSTAVO ABELLA was and is a resident of MIAMI-DADE and at all times relevant hereto suis juris.

4. Defendant, Miami-Dade County (hereinafter "COUNTY"), is a political subdivision of the State of Florida, a Florida municipal corporation, and, at all times relevant hereto, it employed Defendant OFFICERS, ex Police Chief Robert Parker and new Director of the Miami Dade Police James Loftus.

5. At all times relevant hereto and in all actions described here in, Defendant Nancy Simon (hereinafter "SIMON") was acting as elected official, and in such capacity as a public servant.

4

6.    At all times relevant hereto and in all actions described herein, Defendant, Officer JUAN F. RODRIGUEZ, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

7.    At all times relevant hereto and in all actions described herein, Defendant, Officer HECTOR VALLS, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

8.    At all times relevant hereto and in all actions described herein, Defendant, Officer BENJAMIN RIVERA, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

9.    At all times relevant hereto and in all actions described herein, Defendant, Officer RAYMOND DEL VALLE, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

10.    At all times relevant hereto and in all actions described herein, Defendant, Officer A. SALAZAR, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

11.   At all times relevant hereto and in all actions described herein, Defendant, Officer RICHARD BAEZ, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

13.   At all times relevant hereto and in all actions described herein, Defendant, JOHN DOES OFFICERS (hereinafter "DOES"), were acting under color of law as police officers, and in such capacity, as the agents, servants and employees of Defendant, COUNTY.

14.   At all times relevant hereto and in all actions described herein, Defendant, MAJOR FRANK BOCANEGRA (hereinafter "BOCANEGRA"), was acting under color of law as the Town Commander of the Police in the Town of Miami Lakes, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.   BOCANEGRA was the immediate supervisory officer responsible for the conduct, training and supervision of police officers under his charge.

15.   At all times relevant hereto and in all actions described herein, Defendant, Ex- POLICE CHIEF ROBERT PARKER (hereinafter "PARKER"), was the duly appointed Chief of Police of the Department.   As such, he was the commanding officer of Defendant Officers, and was responsible for their training, supervision and conduct. He was also responsible for enforcing the regulations of

6

the DEPARTMENT and for ensuring that the police personnel of the DEPARTMENT obey the laws of the State of Florida and the United States of America. At all times relevant hereto, Defendant, PARKER, was acting in such capacity as the official Head of the DEPARTMENT for Defendant COUNTY.

16.   At all times relevant hereto and in all actions described herein, Defendant, POLICE CHIEF JAMES LOFTUS (hereinafter "LOFTUS"), was the duly appointed Chief of Police of the Department.   As such, he was the commanding officer of Defendant Officers, and was responsible for their training, supervision and conduct. He was also responsible for enforcing the regulations of the DEPARTMENT and for ensuring that the police personnel of the DEPARTMENT obey the laws of the State of Florida and the United States of America. At all times relevant hereto, Defendant, LOFTUS, was acting in such capacity as the official Head of the DEPARTMENT for Defendant COUNTY.

## COUNT I

### VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW 42 U.S.C. § 1983 AGAINST DEFENDANT COUNCILMEMBER NANCY SIMON

17.   Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

18.   A couple of days after a Town Meeting on February 2007 where Plaintiff spoke against an issue regarding posting commercial signs on the right of ways in the streets of the Town of Miami Lakes, Plaintiff was stopped by a Police Officer and asked to remove a sign that he had displayed on the back of his pick up that read "COUNCILMEMBER NANCY SIMON WANTS TO POLLUTE MIAMI LAKES WITH SIGNS". When the Police Officer was asked who gave him the order to ask Plaintiff to remove the sign he stated that he did not remember. Police threaten in front of two other Police officers that if Plaintiff did not remove the sign he would be given a citation. Plaintiff told the Police Officer that he was not going to remove the sign. When Plaintiff requested thru Public Records who gave the order to remove sign, nobody knew regarding that subject. Elected Officials in the Town of Miami Lakes cannot give a direct order to any Police Officer or any employee of the Town of Miami Lakes. They have to direct their requests thru the Town Manager. SIMON's actions were undertaken as retaliation for Plaintiff's exercise of his First Amendment right to free speech.

19.   A couple of days after Plaintiff spoke at the Town Meeting of March 2007 against the attitude of an employee of the Adult Education Classes, teaching at the West Community Center of the Town of Miami Lakes a "Watch Order for police presence" was issued for the days and time that Plaintiff had his minor daughter in the Ballet and Martial Arts classes. Town of Miami Lakes' staff (i.e.

8

Parks Director, Town Manager neither Town Mayor) were aware of this "Watch Order" issued for this park. As soon as, Plaintiff and his wife requested a copy of it thru public records the watch order was suspended.

20.   On November 2007 while Plaintiff along with his wife were parked outside his minor daughter's school, SIMON asked School Security "to remove Plaintiff from the school property" and the School Security answered to her that "First of all, Plaintiff was not in school property; Secondly, Plaintiff was not doing anything wrong".   SIMON then proceeded to call the police and a few minutes later, two (2) patrol vehicles and a motorized police officer drove by where Plaintiff was parked and inside his car.

21.   On December 21st, 2007, in the evening, Plaintiff was served with a Temporary Injunction for Protection.   The Injunction stated that ABELLA shall not go to, in, or within 500 feet of SIMON's residence, TOWN HALL, PUBLIX, located at 67 Ave. NW 154 St.; CVS PHARMACY, located in the same shopping center as PUBLIX; MARATHON GAS STATION, located at 150 NW AND 61 Ave., and CHEVRON GAS STATION, located within 250 feet from Plaintiff's Condo Apartment.   The commercial stores mentioned before are located in the 4 different entrances to the Town of Miami Lakes.   Plaintiff was restrained from buying his groceries from the supermarket where he has always shopped.   Plaintiff was prohibited from getting his daughter's medication from CVS, and from buying

9

fuel at the gas that is just across his condo apartment. None of these businesses authorized SIMON to prohibit the entrance of Plaintiff to their stores. SIMON knew that Plaintiff's wife does not drive and depends on her husband to mobilize in and out of the Town for their errands.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of her authority and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT II

### MALICIOUS PROSECUTION
### AGAINST DEFENDANT COUNCILMEMBER NANCY SIMON

22. Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

23. On December 19th, 2007 SIMON filed with the Hialeah Court, Domestic Division, a Temporary Injunction for Protection with false allegations against ABELLA as a retribution for a complaint filed with DBPR in which SIMON was found guilty and fined.

24.  SIMON's allegations in this injunction were false.  Also SIMON used and brought TOWN's staff and a Police Officer to the Court Hearings as her witnesses with false allegations.

25.  After 3 Court Hearings and more than 10 hours in total, Judge Victoria Brennan dismissed the case on January 31st, 2008 in favor of ABELLA upon a finding of no just cause to issue an Injunction for Protection against repeat violence.  A true a correct copy of the Order of Dismissal pursuant to Section 741.30 or 784.046, Florida Statutes, is attached as Exhibit " A".

26.  SIMON retained 3 Criminal Attorneys and made the Town of Miami Lakes pay her attorneys' fees with taxpayer's money.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of her authority, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT III
## VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW 42 U.S.C. § 1983 AGAINST DEFENDANT OFFICER JUAN F. RODRIGUEZ

27.  Plaintiff repeats and realleges paragraphs 1-16 and further alleges:

28. On February 2007, Officer Juan F Rodriguez stopped Plaintiff outside his minor daughter's school stating "that he received orders to ask Plaintiff to remove the sign Plaintiff had in the back of his pick up.

29. On March 14, 2007, while Plaintiff was watching her daughter practice martial arts and a police officer approach him to asking him questions regarding of the days and time of the ballet class. When Plaintiff asked the police officer about his presence at this Community Center Police Officer answered that a watch order was issued requesting police presence.

30. A copy of the "Watch Order" was requested and it clearly showed that it was issued by Officer Juan F. Rodriguez. Copy is attached as Exhibit "B".

31. A couple of days later, Plaintiff's wife met with the Town Mayor, at that time, Wayne Slaton regarding the watch order and Mayor Slaton invalidated the Watch Order because it was unjustified.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT IV

## ABUSE OF POWER, HARASSMENT, INTIMIDATION, STALKING
## AGAINST OFFICER JUAN F. RODRIGUEZ

32.  Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

33.  On April 2007, while Plaintiff was in drop off area of his minor daughter, Officer Juan Rodriguez came across the street on 67 Ave. in front of the school and gave a traffic citation to Plaintiff for being parked blocking the handicap spaces.  Plaintiff was not parked, had the motor running and was waiting for his wife who went to drop off their daughter.

34.  Officer Juan Rodriguez asked Plaintiff to move the car and Plaintiff stated to Officer Rodriguez that he cannot move the car because there were barricades because the school was under construction and parking spaces are limited.

35.  Officer Juan Rodriguez wrote a traffic citation and Plaintiff got off the car to take pictures of the situation.  Handicap spaces were already taken by school employees.

36.  Plaintiff went to Court and lost the case due to the false statement that Officer Juan Rodriguez stated in Court.

37.  On this same date, April 16, 2007, Plaintiff's wife sent an email to Robert Parker, Director of the Miami Dade Police Department complaining about

13

Officer Juan Rodriguez's attitude and behavior and the conflict of interest that there was due to that Officer Rodriguez is the Community Officer, he is in every Town Meeting where Plaintiff and his wife used to voice their opinion and who after a couple of days Officer Juan Rodriguez will come after them harassing, stalking and intimidating for voicing their opinions in the meetings and because of the sign Plaintiff had in back of this pick up truck against Councilmember Nancy Simon.

38.   This is the same date that Plaintiff went along with his wife to the Miami Dade Internal Affairs trying to initiate an investigation as to the attitude and behavior displayed by Officer Juan Rodriguez while using the Police Uniform, being armed and using a police vehicle.

39.   Plaintiff's wife complaint ended up being a "contact report" at the Miami Dade Internal Affairs Department.

40.   On January 24th and 31st of 2008, Officer Juan Rodriguez went as a witness of Councilmember Nancy Simon in her Court Hearings for the Permanent Injunction for Protection against Plaintiff.  Officer Juan Rodriguez went with lies and when he was asked who gave him the order to remove the sign Plaintiff had in his truck he stated that he did not remember.

41.   On June 3rd and 4th, 2008, Officer Juan Rodriguez appeared in the vicinity where the Plaintiff reside.  In the mornings of June 3rd and 4th, as soon as

14

Plaintiff was pulling out of the Condominium complex to the main road on NW 154 (MIAMI LAKES DR.), Officer Juan Rodriguez was driving next to Plaintiff displaying his sarcasm, making signs with his hands while driving the patrol car and being in the police uniform.

42.   On June 5th, 2008, Plaintiff wrote a Complaint Letter to Town Commander Frank Bocanegra against Officer Juan Rodriguez.  Copy of that letter went to our former Attorney, Joseph Glick, also to Major Donald Rifkin at Internal Affairs, and also to the Town Mayor and Town Manager of the Town of Miami Lakes.  Plaintiff requested an investigation also a copy of the conclusions and report that the Town Manager had asked Commander Frank Bocanegra on April 2007 regarding the attitude and behavior of Officer Juan Rodriguez.  No response was received from any of the people before mentioned.  Copy Attached as Exhibit "C"

43.   On August 20th, 2008 around 8:15 a.m., while Plaintiff was driving to drop off his daughter, Officer Juan Rodriguez showed up and was driving parallel to Plaintiff being sarcastic.

44.   On August 21st, 2008, when Plaintiff was coming back from dropping off his daughter at school Plaintiff had Officer Juan Rodriguez in the opposite direction.  Officer Juan Rodriguez is not assigned to Miami Lakes K-8 Center

and/or Police Office is not located anywhere surrounding the school before mentioned.

45. There are two (2) Officers assigned to the school, Officer Kenny Torres and Officer Carlos Ortiz, who impartially do their job to the best they can. They represent the hard work of the Police Officers that day by day do their job without being bias.

46. On September 2008, Plaintiff's former Attorney, Joseph Glick, sent a letter to the Miami Dade Police Department regarding all the issues with some Police Officers in Miami Lakes, especially with Officer Juan Rodriguez. No response was received from the Miami Dade Police Department.

47. On October 2008, Plaintiff along with his wife went with former Attorney Joseph Glick to a meeting with Commander Frank Bocanegra. In this meeting were also present Sgt. Eduardo Ruesga, and Captain J. Alongi. Plaintiff's attorney requested them to speak with Officer Juan Rodriguez in order to stop the harassment that Plaintiff and his family were victims of. On November 2008 Plaintiff filed a complaint with the Commission on Ethics and nothing happen.

48. On February 26, 2009, Plaintiff and his wife went to pick up their daughter at school. As Plaintiff was approaching the school he noticed that Officer Juan Rodriguez was there. His patrol car was parked in a private residential driveway while he was standing outside Officer Torres's patrol car speaking with

him.  Plaintiff got off the car and took pictures of Officer Juan Rodriguez and this seemed to have bothered him and he went to his car back up and drove fast to where the Plaintiff's car was.

49.  Plaintiff was asked by Officer Juan Rodriguez to move his car and Plaintiff move his car forward.  Officer Juan Rodriguez wrote a citation for being parked in the no parking space, where there were 2 other cars also parked, without the drivers, and Officer Juan Rodriguez wrote the citation only for the Plaintiff.

50.  When Officer Juan Rodriguez was writing the citation he stated to Plaintiff that "the complaints he filed with the Commission on Ethics was not going to do anything to him", and when Plaintiff's wife stated to him that "he should not be wearing a badge" and that "he makes look the rest of the officers bad" Officer Juan Rodriguez stated "if you want I would remove my gun".  Officer Juan Rodriguez stated there arguing finishing writing the citation and stating that all those complaints Plaintiff will not get anything and that Plaintiff will not be able to prove anything.

51.  Plaintiff's wife called the Miami Lakes Police Station and requested a Supervisor to write a complaint against Officer Juan.  Sgt. Barasch came and wrote the complaint.

52.  Officer Juan Rodriguez stated to Plaintiff and his wife that if they asked to the Police Department to remove Officer Juan Rodriguez from Miami Lakes they will be doing him a favor.

53.  On December 2010, Plaintiff was leaving the Condominium Complex, and as he pulled into the main road, MIAMI LAKES DR., noticed that Officer Juan Rodriguez was in back of him.  Officer Juan Rodriguez proceeded to drive parallel to Plaintiff and started to make signs with his while driving, harassing and intimidating Plaintiff and his daughter.

54.  Plaintiff's minor daughter arrived at school in fear of why Officer Juan Rodriguez was following them, harassing them, making signs, fists, etc. with his hands and did not care about the minor child that was inside the car.

55.  Plaintiff started to take pictures of Officer Juan Rodriguez and Officer Rodriguez seemed to be upset because of the pictures and continued with the sarcasm, harassment and intimidation.  Plaintiff proceeded to make a complaint with the Miami Dade Internal Affairs which ended up again as a contact report.

**WHEREFORE**, Plaintiff respectfully requests that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT V
## ABUSE OF POWER, HARASSMENT, INTIMIDATION, STALKING
## AGAINST OFFICER HECTOR VALLS

56. Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

57. In the evening of January 7th, 2008, Plaintiff called the Police in Miami Lakes to file a Police Report against Thomas Calvey, President of the Condo Association, at that time, where the Plaintiff resides, because he was seen passing out flyers with libel information against Plaintiff. Also this flyer contained a picture of Councilmember Nancy Simon and was addressed to the residents in her capacity as elected official.

58. Officer Hector Valls took away from Plaintiff's hand the evidence of what was passed a few minutes ago to the residents of the condominium complex. Officer Valls stated "that he had more important things to do". Officer Valls also stated to Plaintiff that "maybe NANCY SIMON paid this man to put this flyer under the door and there was nothing wrong with that. Plaintiff asked Officer Valls then to write the police report and to state that in the police report. Officer Valls asked Plaintiff what did he want to be in the police report? Plaintiff answered that he was the Officer and if he can write the report.

59.  Plaintiff asked again to Officer Valls if he could write the police report and Officer Valls asked Plaintiff "Do you want to get arrested?

60.  Plaintiff answered Officer Valls that if he had grounds to arrest him then to proceed.

61.  Officer Valls put his car in reverse and told Plaintiff to move out of his way.  Plaintiff almost got hit by Officer Valls's patrol car.  He left and took with him Plaintiff's evidence.

62.  During this time, Plaintiff had the Temporary Injunction that was filed by Councilmember Nancy Simon.

63.  Officer Valls could of have gone to Thomas Calvey's condo and asked him where did he get those flyers that he was passing out with libel information.

64.  Officer Valls's statement that "if Ms. Simon paid this person to pass this flyers out and that she has all the right to do it" implicates that Officer Valls might have had knowledge of what was going on.

65.  After Plaintiff filed a complaint with Internal Affairs against Officer Hector Valls, every time Thomas Calvey would call the police with false allegations Officer Hector Valls was being sent.

**WHEREFORE**, Plaintiff respectfully requests that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and award ABELLA all available damages and

relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT V
## ABUSE OF POWER, HARASSMENT, INTIMIDATION, STALKING AGAINST OFFICER BENJAMIN RIVERA

66.   Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

67.   On April 3rd, 2009, Plaintiff and his wife went to drop off their daughter at school.  Because of the lack of parking spaces Plaintiff pulled in the driveway of a friend of his who lives across the school, and has authorized Plaintiff to the use of her driveway at any moment needed.  His wife and daughter got off the car and walked across to take his daughter inside the school.  Plaintiff had driven out from the driveway and went toward Miami Lakeway South and made a Left to go East.

68.   Plaintiff turned Right on the Congregational Church and inside the church Plaintiff made a U-turn to comeback to the school and pick up his wife.

69.   In his way back he noticed Officer Benjamin Rivera outside the school standing up in the sidewalk next to the school.  His wife started to walk across the street.  Plaintiff's noticed that Officer Rivera was screaming to a group of parents that were crossing the street and then when Plaintiff was approaching where

Officer Rivera, Officer Rivera started screaming toward him.   Plaintiff had windows up and did not hear what Officer Rivera was saying.

70.   Plaintiff lowered the window and drove slowly trying to hear and understand what Officer Rivera was saying.   When Plaintiff came closer to him, Officer Rivera told Plaintiff to park that he was going to write a citation for him.

71.   Plaintiff pulled over the approached of the other entrance to the Congregational Church, and Officer Rivera wrote the citation for "Parking – Posted/Prohibited", 316.1945(1)(A)(10).   License Plate in the citation had a different letter from the Plaintiff's plate.

72.   10 minutes after Plaintiff received the citation from Officer Rivera, Plaintiff arrived home and a few minutes later Officer Rivera was outside the building where the Plaintiff resides.

73.   Plaintiff's wife went outside to take a picture to document the police presence outside their apartment.   Officer Rivera turned and noticed that Plaintiff's wife had taken and picture and scream at her as to if she wanted his badge number and she answered yes.   Officer Rivera gave her his badge number and then he screamed if she wanted the Internal Affairs phone number and she said no, she stated to Officer Rivera that she had that number already.

74.  Plaintiff requested a court date for this citation. Court date was for June 15th, 2009.

22

75. At the Court Hearing, Officer Rivera had numerous cases. Some of them were found guilty and some others the Hearing Officer Tanya J. Brinkley said not guilty. When it was Plaintiff's turn, Officer Rivera starting getting out of control and the Hearing Officer said that she was going to leave the case to the end of all the Hearings of that hour.

76. When it was the Plaintiff's turn, Officer Rivera started by trying to change the Statute No., and then he said his version of what took place the day of April 3rd, 2009. When it was Plaintiff's turn to speak, he objected to the lies Officer Rivera had stated and told the Hearing Officer what had happened that day. Also Plaintiff stated to the Hearing Officer that his wife, who was outside, was a witness to this case. The Hearing Officer told Officer Rivera to show respect for the court and to treat Mr. Abella with respect too. Many times she had to tell him to calm down because of the outburst he had.

77. Officer Rivera stated to the Hearing Officer in one of his outbursts that "Gus" had filed many complaints against some Police Officers and Miami Lakes and also stated that "because of him is that I am at the school".

78. The Hearing Officer stop Officer Rivera and told him that if this was something personal, and asked him not to call him "Gus"; to call him Mr. Abella, and also the Hearing Officer stated to Officer Rivera that if "Mr. Abella has all the right to file any complaints against some police officers if they have done wrong".

23

79. Plaintiff's wife came inside and the Hearing Officer asked questions to her and also asked her to draw where she was drop off along with her daughter and where was Officer Rivera standing and where was her husband positioned when she went across the street to wait for her husband.

80. Plaintiff's wife answered all the questions and Officer Rivera started an outburst, and the Judge told him to calm down. The Hearing Officer told Plaintiff's wife to sit down.

81. The Hearing Officer in view of all the information that was given by Officer Rivera, Mr. Abella and his wife, told Mr. Abella that the Judgment was "not guilty", and to that instant Officer Rivera came out with another outburst screaming and stating that he wanted continuance and that he will bring witnesses, which it was denied by the Hearing Officer.

82. The Hearing Officer told Mr. Abella and his wife that they can live, and pick up a copy of the Judgment.

83. Officer Benjamin Rivera has also been part of the Police Officers that have been sent to park outside our porch almost on a daily basis. From two (2) to (3) Police Officers were sent to be parked outside the Plaintiff's porch, backed up with their motors running toward our sliding door.

84. Officer Rivera was ordered to be at school and then to come and parked outside Plaintiff's apartment.

24

85.   Officer Rivera was almost on a daily basis outside the school and outside the Plaintiff's apartment with the purpose to oppress, intimidate, harass and stalk Plaintiff and his family.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.


## **COUNT VI**

### **ABUSE OF POWER, HARASSMENT, INTIMIDATION AGAINST DEFENDANT OFFICER RAYMOND DEL VALLE**

86.   Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

87.   On February 18, 2008, Plaintiff's car had a citation in the windshield of his car left by Officer Raymond Del Valle.

88.   Plaintiff had his car parked in his parking space.

89.   Plaintiff resides in a Private Condominium Complex where the Condo Association Board has no written contract with the local police to give any type of citations to the vehicles parked inside the private community.

90. Plaintiff requested a Court date. Citation was dismissed.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT VII

## ABUSE OF POWER, HARASSMENT, INTIMIDATION AGAINST DEFENDANT OFFICER A. SALAZAR

91. Plaintiff realleges paragraphs 1 through 91 above as if fully incorporated herein, further alleges:

92. On August 12th, 2008 Plaintiff went to pick up public records to Town Hall and Plaintiff parked in front of the building where there were other cars parked. When Plaintiff return to his car a couple of minutes later Officer A. Salazar was starting to write a Parking ticket for Plaintiff.

93. Plaintiff told Officer Salazar that he just went a couple of minutes to pick up documents and Plaintiff even showed him the receipt that he paid for them.

94. Officer Salazar stated to Plaintiff "I was given the order to write you a ticket and BOCANEGRA is watching me until I finish giving you the ticket".

95.   BOCANEGRA saw Plaintiff getting there and even laughed when he saw Plaintiff. After I received the ticket Plaintiff went upstairs to the 2nd floor and asked to speak to Sgt. E. Ruesga and Plaintiff told Sgt. Ruesga that this ticket was issued unjustly and Plaintiff went outside with Sgt. Ruesga and they both noticed that now there was a bus parked in back of Plaintiff and Plaintiff asked Sgt. Ruesga if the bus was going to be given also a citation. Sgt. Ruesga answered "if you want take it up with Frank Bocanegra".

96.   The Parking Citation was issued around 10 a.m. Plaintiff came home got the camera and went back to take pictures of the area and also pictures from the cars that were parking in this area and not ticket was given to them.

97.   After a couple of days Sgt. Ruesga left a message for Plaintiff asking Plaintiff to call Sgt. Ruesga. Plaintiff called and Sgt. Ruesga stated that Captain Alongi, Major Bocanegra and him had reviewed the ticket and decided to rip off the ticket.

98.   A few days later, Officer Salazar stated to Plaintiff that "he was ordered by BOCANEGRA to give Plaintiff the citation for improper parking. SALAZAR also stated that prior to work here in Miami Lakes he had worked with BOCANEGRA in another city and that BOCANEGRA knew how far he could do wrong without getting caught".

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT VII

### VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW 42 U.S.C. § 1983 AGAINST DEFENDANT OFFICER RICHARD BAEZ

99.  Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

100.  On September 19, 2009, Plaintiff's wife and his daughter were at home.  Plaintiff's daughter was doing homework in the living room and noticed that outside their porch a police car was backing up and that a few minutes later another police car back up.

101.  Plaintiff's daughter called her mom, who was in the bedroom, and told her about the police officers outside.  Plaintiff's wife proceeded to get her camera to take pictures of the police officers, who seem to be different from the ones that have been used to be outside their porch.  One police officer had already got off his car.

102.  When the other police officer got off his patrol car, Plaintiff's wife proceeded to take pictures of him.  The police officer then trespassed Plaintiff's property and came inside the porch to ask questions regarding the pictures that Plaintiff's wife had taken.

103.  Plaintiff's wife and daughter were in fear, nervous of the presence of the police officer not just outside their porch but outside their sliding door. Plaintiff's daughter asked her mom why the police would send a couple of officers on a Saturday.  And why was that Officer in their property.

104.  Officer BAEZ at no moment requested permission to walk inside Plaintiff's property.  Officer BAEZ had no business inside the Plaintiff's property. Officer Baez was not authorized by Plaintiff's and/or his wife to come inside their property.

105.  Officer BAEZ had not right asking Plaintiff's wife about the picture she took from her living room to the cars and police officers that were parked outside their porch.

106.  Plaintiff's wife, shaking, nervous and in fear that even the camera was going to be taken away, showed Officer BAEZ that the battery had not sufficient battery and was not able to take the picture.

107.  The Police Department in Miami Lakes are aware that Plaintiff has 2 surveillance cameras outside in his porch pointing toward the parking lot, and that

any activity outside is being captured by the cameras.   Also, Plaintiff has volunteered copy of videos when a resident had been attacked outside by a thief, also when a car has been stolen, and also when the tires of a car had been stolen and everything has been captured on the cameras.

108.   Plaintiff's wife called his supervisor and filed a complaint against him. When the supervisor listened to what took place she called an officer to come to write the report.   The Officer that came was the one that came earlier with Officer BAEZ.   The Officer did not receive the information from Plaintiff's wife but from the supervisor.   The statement in there is not accurate to what took place earlier that day.

109.   On September 21, 2009, when Plaintiff went to drop off his daughter, as soon as they were approaching the school, Plaintiff's daughter noticed that there was an additional police officer outside the school and that he was the same that had been just 2 days ago trespassing their property.   Plaintiff's wife confirmed her daughter's statement and Plaintiff took his camera and took a picture of him.

110.   After dropping off Plaintiff's wife and daughter and keep driving, because of the lack of parking spaces, when Plaintiff came back to pick up his wife,  when Plaintiff was going to take another  picture Officer BAEZ came and pushed Plaintiff's camera toward Plaintiff's face and kept pushing inside the window.

111.  When the report reached Miami Dade Internal Affairs, 2 persons came and they were shown the video from the surveillance camera.  Plaintiff's wife gave her statement under Oath and a copy of the video was later on provided to them.

112.  Complaint against Officer BAEZ ended up as a contact report.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT VIII

## ABUSE OF POWER, HARASSMENT, INTIMIDATION AGAINST DEFENDANT JOHN DOES OFFICERS

113.   Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

114.  Since the end of December 2007 thru December 2010 Plaintiff had been surrounded anywhere he goes in the Town of Miami Lakes by Police Officers.

115.  Since Councilmember Nancy Simon filed the Temporary Injunction for Protection and Plaintiff was served, Plaintiff's has had police presence outside

his porch, and has had police presence at his daughter's school, besides the two Police Officers that are assigned to the school.

116.   Almost on a daily basis Plaintiff had from 2-4 patrol cars and motorcycles parked outside, even blocking the entrance to the building.  These John Does Officers would stay more than 4 hours outside.

116.   Out of 20-25 empty parking spaces outside the Plaintiff's building, police officers will park outside the Plaintiff's porch and leave their motors running.

117.   Plaintiff and his former Attorney, Joseph Glick, followed all proper procedure trying to stop the harassment, intimidation, stalking, that he and his family were been victims of.

118.   Plaintiff and his former Attorney, Joseph Glick, sent letter asking for an investigation in order to stop all the abuse of power, violation of civil rights, besides the intimidation, harassment, stalking that Plaintiff and his family were being victims.

119.   Plaintiff went to all the entities explaining and showing the evidence that he had and must of those entities stated to him that they had no jurisdiction over this.

120.   Plaintiff went to Miami Dade State Attorney's Office, Miami Dade Public Corruption, Miami Dade Commission on Ethics, and they stated that they had no jurisdiction.

121.   Plaintiff was sent to the Town Commander of the Police in the Town of Miami Lakes, BOCANEGRA and Plaintiff stated to them that BOCANEGRA was also part of this.

122.   Plaintiff was sent to the Internal Affairs of the Miami Dade Police Department and Plaintiff stated to them that all the complaints that have been filed against some of these police officers ended up as "contact reports".

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT IX

## VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW 42 U.S.C. § 1983 AGAINST DEFENDANT MAJOR FRANK BOCANEGRA

123.   Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

33

124.   Defendant BOCANEGRA acted negligent when he allowed that the before mentioned police officers, who were under his supervision as the Town Commander of the Police in Miami Lakes abuse their power, violating the Plaintiff's civil rights and trespassing Plaintiff's property.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT X

## ABUSE OF POWER, HARASSMENT, INTIMIDATION, TRESPASSING AGAINST DEFENDANT MAJOR FRANK BOCANEGRA

125.   Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

126.   Defendant BOCANEGRA did not take any effective action when Town Manager, Alex Rey, sent him an email on April 16, 2007 asking BOCANEGRA to "Please handle through the appropriate police procedures. Send me a report with the conclusions".

127. Plaintiff's wife requested thru public records on January 8, 2008, a copy of the report and conclusions that Town Manager request to BOCANEGRA and Plaintiff's wife received an email stating that "There is no record responsive to this request". Copy attached as Exhibit "D".

128. Plaintiff tried thru different approaches to put a stop to the intimidation, harassment, abuse of power, violation of civil rights, stalking that Officer Juan Rodriguez was doing to Plaintiff and his family. (See COUNT III and IV). Plaintiff had already sent an email, a letter, had meet with BOCANEGRA and by taking no action BOCANEGRA failed to properly discipline the misconduct of one of the officers that are under his supervision for the good of the residents of the Town of Miami Lakes.

129. Plaintiff tried thru different approaches to put a stop to the intimidation, harassment, abuse of power, stalking, that JOHN DOES Officers were causing to Plaintiff and his family. BOCANEGRA did not take any action to stop the misconduct, abuse of power, trespassing, intimidation, stalking, and harassment of these JOHN DOES Officers.

130. BOCANEGRA failed to provide Equal Protection under law to Plaintiff and his family.

131. BOCANEGRA abused his power and position when he ordered Officer A. Salazar to write a Parking Citation (See COUNT VII).

132.   For 3 days was BOCANEGRA asking Plaintiff to come by his office and Plaintiff sent an email stating to him that as per his Attorney's advice he was declining to go and meet with him.

133.   Then Plaintiff's had a message in his cell phone to call Sgt. Ruesga to the Miami Lakes Police.  When Plaintiff called Sgt. Ruesga stated to Plaintiff that Captain Alongi, BOCANEGRA and him had review the Parking Citation and decided to rip off the citation.

134.   Copies of pictures of the police presence outside Plaintiff's porch and in the way to drop off and pick up Plaintiff's daughter to school are available upon request if necessary.

WHEREFORE, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.


## COUNT XI

## ABUSE OF POWER, HARASSMENT, INTIMIDATION, TRESPASSING AGAINST DEFENDANT EX DIRECTOR ROBERT PARKER

134.    Plaintiff realleges paragraphs 1 through 16 above as if fully incorporated herein, further alleges:

135.    Plaintiff verbally communicated to Director PARKER regarding the harassment, violation of civil rights, trespassing, stalking, intimidation that Plaintiff and his family was being victim of.

136.    Plaintiff's attorney also sent a letter to Director PARKER on September 16th, 2008 with an attached document listing all the incidents that Plaintiff and his family was going thru.  Plaintiff and his attorney expected a response from the Director PARKER of the Miami Dade Police Department but Plaintiff's complaint was just discarded and no action was taken to this date.  Copy attached as Exhibit "E".

137.    Director PARKER failed to investigate, ask questions, and stop the misconduct of these police officers before mentioned.

138.    Director PARKER failed to provide Equal Protection under law to Plaintiff and his family.

139.    Director PARKER, as such, was the commanding officer of Defendant Officers, and was responsible for their training, supervision and conduct. He was also responsible for enforcing the regulations of the DEPARTMENT and for ensuring that the police personnel of the DEPARTMENT obey the laws of the State of Florida and the United States of America.

WHEREFORE, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff Abella demands trail by jury on all issues so triable.


Respectfully Submitted,



_____
GUSTAVO ABELLA

7400 MIAMI LAKES DR.,
APT. D-108
MIAMI LAKES, FL 33014
CELL: 305-305-6622
Keepingmlml@yahoo.com

38

EXHIBIT "A"

Form -20A- / -ODIS-

**FILED**

**JAN 3 1 2008**

**CLERK**

IN THE CIRCUIT COURT FOR THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR DADE COUNTY, FLORIDA

SIMON NANCY )
        Petitioner, )
                    )
                    )
v.                )
                    )
GUSTAVO ADOLFO ABELLA )
        Respondent. )
                    )

[ X ] DOMESTIC VIOLENCE DIVISION
[   ] FAMILY DIVISION

Case No. **07-032867-FC-04**

**ORDER OF DISMISSAL
PURSUANT TO SECTION 741.30
OR 784.046 FLORIDA STATUTES**

**JAN 3 1 2008**

    THIS CAUSE came to be heard on this _____ day of _____ , _____ , on the
[   ] Court's [   ] Petitioner's [ ✓ ] Respondent's motion, and it appearing that:

[   ]     The order entered on the _____ day of _____ , _____ , has expired
       on the _____ day of _____ , _____ , it is therefore

[ ✓ ]     **NO JUST CAUSE:** upon review, the evidence presented is insufficient under Florida law
       (section 741.30 or 784.046, Florida Statutes) to allow the Court to issue an injunction for
       protection against domestic, repeat, dating or sexual violence, it is therefore

[   ]     **DENIED - NO HEARING**

[   ]     **FAILED TO APPEAR:** the Petitioner having failed to appear for hearing for a Permanent
       Injunction on the **31st day of January, 2008, at 01:30 PM**, it is therefore

[   ]     **FAILED TO APPEAR:** both parties having failed to appear for hearing for a Permanent
       Injunction on the **31st day of January, 2008, at 01:30 PM**, it is therefore

[   ]     **FAILED TO COMPLETE:** Petitioner failed or declined to complete application process, it is
       therefore

[   ]     **FAILURE TO EFFECT SERVICE:** Respondent has not been served, and 120 days have
       passed since the filling of the petition.

**DOMESTIC VIOLENCE
COURTHOUSE CENTER
175 N.W. 1ST AVENUE, ROOM 142
MIAMI, FL 33128**

**ORDERED and ADJUDGED** that this cause is hereby DISMISSED with ____ without ✓ prejudice.

**Court Costs.**

[   ]   Pursuant to section 741.30(2)(a) and 784.046(3)(b),  Florida Statutes, no filing fees to the Clerk of the Circuit Court or service fees to the sheriff are assessed for a **petition for protection against domestic, repeat, dating, or sexual violence,** due to the statutory prohibition.

**DONE and ORDERED** at Dade County, Florida, this _31_ day of _Jan_, _2008_

_____
Judge

VICTORIA R. BRENNAN

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY
original on file
HARVEY RUVIN
JAN 3 1 2008

Respondent's Date of Birth: 07/29/1956

Petitioner's Address:
6980 GLENEAGLE DR , MIAMI LAKES, F. 33014-

Respondent's Address:
7400 MIAMI LAKES DR D-108  MIAMI LAKES, FL 33014-

### CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a certified copy of this Order was delivered to:

[ ✓ ]  Petitioner, _____,
    by [ ✓ ] hand [　] mail [　] certified mail
    at _____ AM/PM

[ ✓ ]  Petitioner's counsel, _____,
    by [　] hand [　] mail [　] certified mail
    at _____ AM/PM

[ ✓ ]  Respondent, _____,
    by [ ✓ ] hand [　] mail [　] certified mail
    [　] sending it to sheriff for personal service
    at _____ AM/PM

[ ✓ ]  Respondent's counsel, _____,
    by [ ✓ ] hand [　] mail [　] certified mail
    at _____ AM/PM

[　]  Law Enforcement Agency

[ ✓ ]  Warrants Department
    JAN 3 1 2008

this _____ day of _____, ____.

Harvey Ruvin, Clerk
Circuit and County Court

_____
Deputy Clerk

ORDISMIS.RTF
6/26/07

EXHIBIT "B"

## TML WATCH ORDER REQUEST

AREA: (                                      DATE: 3-14-07

ADDRESS OF WATCH ORDER  15151 MONTROSE RD

DATES REQUESTED   FROM 3-13-07     TO 4-14-07
TIMES REQUESTED   FROM 4:30 pm    TO 630 pm  (TUES - THUR)
ONLY

RESON FOR WATCH ORDER  PLEASE HAVE AN OFFICER
ACTUALLY ENTER THE CIVIC BUILDING AND
WALK THE HALLWAY. THIS IS FOR POLICE
PRESENCE

### ACTION TAKEN

CITATIONS:
WARNINGS:
FI'S        :

OTHER_____

_____

Watch Order Taken by:

Officer: I. Rodriguez
305-979-7579





June 5th, 2008

Police Commander
Frank C. Bocanegra
Town of Miami Lakes
15700 N.W. 67th AVE.
Miami Lakes, FL 33014

REF: **COMPLAINT AGAINST OFFICER JUAN RODRIGUEZ**

Major Bocanegra,

Please receive this letter as a Complaint against Officer Juan Rodriguez. On June 3rd and 4th, 2008 Officer Rodriguez appeared in the vicinity of the place where I reside with my family. In the morning when I am in my way to drop off my daughter at her school, I have Officer Rodriguez driving next to me and passing by. On June 4th, he displayed his sarcasm being in his uniform and driving his Police Car. This type of attitude should not be allowed from him or anyone else.

In view of the dispute between myself and my wife and the Town of Miami Lakes, I ask you to initiate an investigation as to what is the purpose and reason for his attitude and behavior. I have seen Officer Rodriguez surveying me in an attempt to harass and/or intimidate me and my family. Officer Juan Rodriguez displays his sarcasm when he sees me and his appearances around the place where I live and take my daughter to school are going beyond the normal circumstances. The Police Department in Miami Lakes is not located in/or around the area where I live and where I take my daughter to school.

Last year around April 2007, we complaint against Officer Rodriguez with the MDPD Internal Affairs but nothing happened. Sgt. Soto has knowledge of this complaint. 2 investigators from Internal Affairs came to our Condominium and also spoke to Sgt. Soto about it. There were different incidents that took place for some months and Officer Rodriguez did not stop, Internal Affairs did nothing.

Major Bocanegra, the Town Manager, Alex Rey, requested you in an email dated April 16, 2007, to send him a report with the conclusions of the investigation and on January 8, 2008 I requested thru Public Records a copy of your report to the Manager but I was told by the Town Clerk, Debra Eastman, in an email dated January 14th, 2008 that there was no record responsive to this request. Please let me know how I can get a copy of your conclusions to the Manager regarding this investigation.

At the Court Hearing of January 31, 2008 in the case Nancy Simon vs. Gustavo Abella, my Attorney at that time, Mr. J. Altschul, asked Officer Rodriguez who gave him the order to

remove a sign I had on my car, and Officer Rodriguez said he did not remember. I don't know how many people give him orders, I thought his Supervisor is that one in charge to give him orders. I would like to have in writing who is his Supervisor and if there is someone else that also gives him orders.

Officer Juan Rodriguez' attitude and behavior have been displayed from before but nothing has happened. I expect that now being the second time complaining about the same Police Officer some action can be taken.

Major Bocanegra, I expect that my family and I do not have to go thru any type of retaliation from Officer Juan Rodriguez and/or any other member of the Police Department because of my complaint. We have had enough and this got to stop and an investigation should be done. We have seen how some other Police Officers have shown up in any place that we have been in Miami Lakes and just by being at our daughter's school and at the place where we live.

Please let me know what actions you are going to take.

Sincerely yours,

Gustavo Abella
7400 Miami Lakes Dr., D-108
Miami Lakes, FL 33014

cc. Attorney Joseph Glick
    Major Donald Rifkin, Internal Affairs, PCB
    Mayor Wayne Slaton, Town of Miami Lakes
    Manager Alex Rey, Town of Miami Lakes



miriam

**From:** Eastman, Debra [EastmanD@townofmiamilakes.com]
**Sent:** Monday, January 14, 2008 5:27 PM
**To:** miriam
**Subject:** RE: PUBLIC RECORDS

There is no record responsive to this request.
Debbie

**From:** miriam [mailto:hondlady@bellsouth.net]
**Sent:** Tuesday, January 08, 2008 2:51 PM
**To:** Eastman, Debra
**Subject:** PUBLIC RECORDS

I would like to request thru Public Records a copy of the report and conclusions that the Town Manager requested
Frank Bocanegra, in an email dated April 16, 2007.

Please let me know when it is ready.

Thank you,

Miriam Mendoza

6/5/2008

From: Rey, Alex [mailto:ReyA@townofmiamilakes.com]
Sent: Monday, April 16, 2007 8:39 AM
To: miriam; NBoniske@wsh-law.com; rparker@mdpd.com; Bocanegra, Frank C. (MDPD)
Cc: Slaton, Wayne; Eastman, Debra; andi.phillips@nbc.com
Subject: RE: Police Officer - Conflict of Interest??????

Frank,

PLease handle throught the appropriate police procedures. Send me a report with the conclusions.

Thanks,


**Alex Rey, Town Manager**
**Town of Miami Lakes**
Phone: 305-364-6100
Fax:    305-558-8511



---

From: miriam [mailto:hondlady@bellsouth.net]
Sent: Sunday, April 15, 2007 11:46 AM
To: Rey, Alex; NBoniske@wsh-law.com; rparker@mdpd.com
Cc: Slaton, Wayne; Eastman, Debra; andi.phillips@nbc.com
Subject: Police Officer - Conflict of Interest??????

As a Town and Government of where we are Taxpayers, what responsibilities do you have in permitting or stopping this continual harassment and/or intimidation?

We feel this is unjust, unprofessional and also a conflict of interest being the same Officer Juan Rodriguez, that attends and listens to our comments that are being said at the Town meetings is the same Officer that pulled us over, signed the request of a watch order and gave us the citation at the school we have recently complaint .

I would explain three different issues:

1.  One day after dropping off my daughter at the ML K-8 thru the loop, I made a right turn on White Oak Drive and came back around the back (PLC) of the school, when I approach the intersection of White Oak Drive and Miami Lakeway South and made a left, Officer Juan Rodriguez pulled me over to the side and when we stopped he said "he was given an order for him to tell us that we have to remove our sign because there was a violation having the sign in the place it was". I asked him who gave him the order and he responded me "I cannot tell you", it is complaint. So, later on, we went to the Police Dept. in the 2nd Floor of the Town, to request a copy of the complaint. We wanted to know if any of the Councilmembers that are on display in our sign was the one complaining and Officer Rodriguez was called to come to the Office to respond our questions. When he got there, he denied have said that someone complaint about it, I confronted him repeating his own words and then he said that the Town Manager asked him to look for any statutes related to having signs on display on automobiles.   Later on that day, I received 2 -3 phone calls from this officer letting us know that we didn't have to remove it or lower it because of the hauling mirrors and he gave me the statute about it.  Then later on, he called me again and told me that even if we didn't have the hauling mirrors there was no violation for having the sign in the place we had it.

2.  After the Town meeting of March 13, 2007, my husband and I spoke on an issue that was in the Agenda related to the Adult Education Classes and criticized the attitude of Mrs. Miriam Duman toward ourselves and the 2 weeks she was at the Community Center West intimidating some other parents and children there. Officer Juan Rodriguez was at this meeting too and the next day at a different meeting Mrs. Duman ordered a Watch Order for the Community Center West on the days and time that we take our

9/5/2008

daughter to her classes. After asking the Police Dept., Major Bocanegra, in Miami Lakes and the Town Manager, Alex Rey, the last email I received was from Major Bocanegra where he stated that it followed proper protocol. The next day I met with Mayor Slaton for some other issues I asked him about this watch order and he said to me that this Watch Order was not in effect for not following proper procedure. Now, why Officer Rodriguez didn't follow proper procedure? There was not specified reason in the form (In my opinion, this is just a piece of paper that doesn't specify any statute, if any, of the Law of why it is required, i.e. any statute of Law about someone being suspicious of drugs, illicit business, etc. it looks like it was written on a rush); also, doesn't show who is the complaint source, doesn't
   show any higher officer authorizing the order.

3. On Friday, April 15, 2007, we went to drop off our daughter to school; my husband dropped off us at the main entrance of the school drove his car to the side to let the traffic flow properly. At no moment did my husband turned off the car or get out of his vehicle until Officer Juan Rodriguez came to the car in an angry attitude and told him to move the car. He should of notice and realized the traffic that was all around the vehicle and the barricade that was directly in front of his car and Officer Rodriguez told my husband to move the vehicle forward. There was too much traffic congestion for him to do what the Officer wanted him to do at that moment. He ended up getting a citation for blocking the handicap access where school's staff members had already parked.

For bringing out certain issues at the Town meetings where also Officer Juan Rodriguez attends should we be deprived of voicing our opinion? Should we be intimidated, scared to voice our opinion here in the Town of Miami Lakes?

For the last three Town Meetings in Miami Lakes we have voiced our opinion and within 2 to 3 days we have been approached and/or there has been an incident that Officer Rodriguez has come to us or pulled us over in reference to a comment we have said in a Town meeting.

Our opinion in different issues of the agenda at the meetings are related to Councilmembers Nancy Simon, Richard Pulido and Michael Pizzi and are the same Councilmember names we have on display in the sign we have in our car. Our comments at the Town Meetings have become a police matter ever since we touched upon issues related to this three Councilmembers.

Let us remember and not forget that this is the United States of America and we have Freedom of Speech and this situation could not be clearer than water as to what is behind this problem.

Mr. Parker, we have annexed a copy of the Watch Order that was issued by Officer Rodriguez on March 13. In our opinion, we think that some changes need to be done and also proper procedures be followed. The person making the complaint should be listed and the specified reason why it should be done. Another thing missing in this form is that it should be written the statute from the Law making reference to the complaint. If the watch order is for a Town Facility I think the Town's Staff, in this case the Town Manager or any Chief of Dept. should be asked and included in this form for their knowledge. I would like to know if this type of request needs to be authorized by someone else higher in rank than the officer taking note. Important: The Town's Staff did not have knowledge of this watch order until I request a copy thru Public Records because we saw a Police Officer enter the Town facility, community center, where classes are given the children, and the Police came inside to watch and then stood outside for a while and we asked why was the reason of his visit to this place. He told us there was a watch order to come to this place. So, I proceeded to request it to the Police Dept. and to the Town Clerk of the Miami Lakes.

Please, let us know what can be done so we cannot keep being single out every time we voice our opinion at a Town Meeting.

9/5/2008



LAW OFFICES OF

# Joseph A. Glick, P.A.

JOSEPH A. GLICK
FLORIDA BAR BOARD CERTIFIED
CIVIL TRIAL LAWYER
CERTIFIED CIRCUIT COURT MEDIATOR

7300 N. KENDALL DRIVE
SUITE 380
MIAMI, FLORIDA 33156

TELEPHONE (305) 668-8311
TELEFAX (305) 668-8313
EMAIL: JGLICKLAW@CAMTEQ.NET

September 16, 2008

Via Priority Mail #0103-8555-7494-5631-4789
Robert Parker, Director
Miami-Dade Police Dept.
9105 N.W. 25th Street
Doral, FL 33172

Re: My Client: Gustavo Abella and Miriam Mendoza

Dear Chief Parker:

I am the attorney for Gus Abella and Miriam Mendoza. It is my understanding that Mr. Abella had an opportunity to speak to you recently about the misconduct of the Miami Lakes Police Department. Mr. Abella and Mrs. Mendoza have been harassed relentlessly by the Miami Lakes Police Department. I am enclosing a chronology of events prepared by Mrs. Mendoza and accompanying reports.

This all stems from a dispute between Mr. Abella and Miami Lakes Vice Mayor, Nancy Simon, wherein Mr. Abella and Mrs. Mendoza exposed the fact that Vice Mayor, Simon, was representing herself as a real estate agent, when in fact her license had expired.

We would like the opportunity to meet with you after you review all of these documents. We are sending a copy to the Florida Department of Law Enforcement in case they need to be involved.

Sincerely,

Joseph A. Glick

JAG/mb

Enc.

cc. Florida Department of Law Enforcement
     M/M Gus Abella