

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 11-20152-CIV-ALTONAGA-BROWN

GUSTAVO ABELLA, pro-se

    Plaintiff,

TOWN OF MIAMI LAKES
COUNCILWOMAN NANCY SIMON, Individually
and in her capacity as Elected Official
MIAMI DADE COUNTY
OFFICER JUAN F. RODRIGUEZ, Individually
OFFICER BENJAMIN RIVERA, Individually
OFFICER RICHARD BAEZ, Individually
MAJOR FRANK BOCANEGRA, Individually, and

    Defendants,

_____/

## THIRD AMENDED COMPLAINT

    The Plaintiff, pro-se, sues Defendants and alleges:

## INTRODUCTORY STATEMENT

    This is an action for damages sustained by Plaintiff Gustavo Abella against

the Town of Miami Lakes and Councilwoman Nancy Simon in her individual

capacity and as an elected official of the Town of Miami Lakes, and against Miami

1

Dade County, Florida, employee, Police Officers Rodriguez, Rivera, Baez, Major of the Police assigned to the Town of Miami Lakes, Frank Bocanegra, in his individual capacity as Town Commander.

Councilwoman Nancy Simon harassed, abused her power as elected official, manipulated Law Enforcement Police Officers against Plaintiff as retribution for Plaintiff's exercise of his First Amendment right to free speech when on February 2007 Plaintiff spoke against an issue on the Agenda regarding an Ordinance on Signs, to be displayed on the swales of the right of way in the streets of the Town of Miami Lakes.   Plaintiff had a sign in back his truck. The sign read "Councilmember Nancy Simon wants to pollute Miami Lakes with signs". Vendors who were in favor of this issue were the Realtors that have commercial offices in the Town of Miami Lakes.  Also, Plaintiff's wife filed on June 2007 with the Florida Department of Business and Professional Regulations (DBPR), Real Estate Section, selling properties after her Real Estate License was nulled and void on September 2004 and Nancy Simon was found guilty and was fined for receiving in the year 2005 more than $28,000.00 in commission.

Plaintiff also brings this lawsuit against Defendant Nancy Simon for intentional infliction of emotional distress and malicious prosecution.  Plaintiff brings this suit against all the Police Officers mentioned before including Major

2

Frank Bocanegra, as Town Commander of the Police assigned to the Town of Miami Lakes, as the immediate supervisory officer responsible for the conduct, training and supervision of police officers under his charge. Defendant Bocanegra was deliberately negligent to the complaints that Plaintiff, his former Attorney Joseph Glick and Plaintiff's wife brought to Defendant Bocanegra's attention. Defendant Bocanegra failed to properly trained police officers and to adequately discipline and supervise in regards to their propensity to commit violation of civil rights, abuse of power, retaliation, intimidation, harassment, and stalking, with the purpose to cause humiliation, embarrassment, injury to their reputations and health and suffered shame, mental anguish and hurt feelings.

## JURISDICTION

1.  This lawsuit states claims that arise under the First Amendment of the United States Constitution protected through 42 U.S.C. § 1983 and the laws of the State of Florida.

2.  Venue is placed in the United States District Court for the Southern District of Florida because it is where all parties reside and where the events complained of occurred.

3

## PARTIES

3.  At all times material hereto GUSTAVO ABELLA was and is a resident of MIAMI-DADE and at all times relevant hereto suis juris.

4.  Defendant, Miami-Dade County (hereinafter "COUNTY"), is a political subdivision of the State of Florida, a Florida municipal corporation, and, at all times relevant hereto, it employed Defendant OFFICERS and Town Commander of the Police in Miami Lakes.

5.  At all times relevant hereto and in all actions described here in, Defendant Nancy Simon (hereinafter "SIMON") was acting as elected official, and in such capacity as a public servant.

6.  At all times relevant hereto and in all actions described herein, Defendant, Officer JUAN F. RODRIGUEZ, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

7.  At all times relevant hereto and in all actions described herein, Defendant, Officer BENJAMIN RIVERA, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

4

8.    At all times relevant hereto and in all actions described herein, Defendant, Officer RICHARD BAEZ, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

9.    At all times relevant hereto and in all actions described herein, Defendant, MAJOR FRANK BOCANEGRA (hereinafter "BOCANEGRA"), was acting under color of law as the Town Commander of the Police in the Town of Miami Lakes, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.    BOCANEGRA was the immediate supervisory officer responsible for the conduct, training and supervision of police officers under his charge.

## COUNT I

### VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW 42 U.S.C. § 1983 AGAINST DEFENDANT COUNCILMEMBER NANCY SIMON

10.  Plaintiff realleges paragraphs 1 through 9 above as if fully incorporated herein, further alleges:

11.    A couple of days after a Town Meeting on February 2007 where Plaintiff spoke against an issue regarding posting commercial signs on the right of ways in the streets of the Town of Miami Lakes, Plaintiff was stopped by a Police

5

Officer and asked to remove a sign that he had displayed on the back of his pick up that read "COUNCILMEMBER NANCY SIMON WANTS TO POLLUTE MIAMI LAKES WITH SIGNS".  When the Police Officer was asked who gave him the order to ask Plaintiff to remove the sign he stated that he did not remember.  Police threaten in front of two other Police officers that if Plaintiff did not remove the sign he would be given a citation.  Plaintiff told the Police Officer that he was not going to remove the sign.  When Plaintiff requested thru Public Records who gave the order to remove sign, nobody knew regarding that subject. Elected Officials in the Town of Miami Lakes cannot give a direct order to any Police Officer or any employee of the Town of Miami Lakes.  They have to direct their requests thru the Town Manager.   SIMON's actions were undertaken as retaliation for Plaintiff's exercise of his First Amendment right to free speech.

12.   On December 21st, 2007, in the evening, Plaintiff was served with a Temporary Injunction for Protection.  The Injunction stated that ABELLA shall not go to, in, or within 500 feet of SIMON's residence, TOWN HALL, PUBLIX, located at 67 Ave. NW 154 St.; CVS PHARMACY, located in the same shopping center as PUBLIX; MARATHON GAS STATION, located at 150 NW AND 61 Ave., and CHEVRON GAS STATION, located within 250 feet from Plaintiff's Condo Apartment.  The commercial stores mentioned before are located in the 4 different entrances to the Town of Miami Lakes.  Plaintiff was restrained from

buying his groceries from the supermarket where he has always shopped.  Plaintiff was prohibited from getting his daughter's medication from CVS, and from buying fuel at the gas that is just across his condo apartment.  None of these businesses authorized SIMON to prohibit the entrance of Plaintiff to their stores.  SIMON knew that Plaintiff's wife does not drive and depends on her husband to mobilize in and out of the Town for their errands.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of her authority and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

### COUNT II
### VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW 42 U.S.C. § 1983 AGAINST DEFENDANT OFFICER JUAN F. RODRIGUEZ

13.   Plaintiff repeats and realleges paragraphs 1-9 and further alleges:

14.   On February 2007, Officer Juan F Rodriguez stopped Plaintiff outside his minor daughter's school stating "that he received orders to ask Plaintiff to remove the sign Plaintiff had in the back of his pick up.

7

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT III

### ABUSE OF POWER, HARASSMENT, INTIMIDATION, STALKING AGAINST OFFICER JUAN F. RODRIGUEZ

15.  Plaintiff realleges paragraphs 1 through 9 above as if fully incorporated herein, further alleges:

16.  On this same date, April 16, 2007, Plaintiff's wife sent an email to Robert Parker, Director of the Miami Dade Police Department complaining about Officer Juan Rodriguez's attitude and behavior and the conflict of interest that there was due to that Officer Rodriguez is the Community Officer, he is in every Town Meeting where Plaintiff and his wife used to voice their opinion and who after a couple of days Officer Juan Rodriguez will come after them harassing, stalking and intimidating for voicing their opinions in the meetings and because of

the sign Plaintiff had in back of this pick up truck against Councilmember Nancy Simon.

17.   This is the same date that Plaintiff went along with his wife to the Miami Dade Internal Affairs trying to initiate an investigation as to the attitude and behavior displayed by Officer Juan Rodriguez while using the Police Uniform, being armed and using a police vehicle.

18.   Plaintiff's wife complaint ended up being a "contact report" at the Miami Dade Internal Affairs Department.

19.   On January 24th and 31st of 2008, Officer Juan Rodriguez went as a witness of Councilmember Nancy Simon in her Court Hearings for the Permanent Injunction for Protection against Plaintiff.  Officer Juan Rodriguez went with lies and when he was asked who gave him the order to remove the sign Plaintiff had in his truck he stated that he did not remember.

20.   On June 3rd and 4th, 2008, Officer Juan Rodriguez appeared in the vicinity where the Plaintiff reside.  In the mornings of June 3rd  and 4th, as soon as Plaintiff was pulling out of the Condominium complex to the main road on NW 154 (MIAMI LAKES DR.), Officer Juan Rodriguez was driving next to Plaintiff displaying his sarcasm, making signs with his hands while driving the patrol car and being in the police uniform.

21.   On June 5th, 2008, Plaintiff wrote a Complaint Letter to Town Commander Frank Bocanegra against Officer Juan Rodriguez.  Copy of that letter went to our former Attorney, Joseph Glick, also to Major Donald Rifkin at Internal Affairs, and also to the Town Mayor and Town Manager of the Town of Miami Lakes.  Plaintiff requested an investigation also a copy of the conclusions and report that the Town Manager had asked Commander Frank Bocanegra on April 2007 regarding the attitude and behavior of Officer Juan Rodriguez.  No response was received from any of the people before mentioned.  Copy Attached as Exhibit "C"

22.   On August 20th, 2008 around 8:15 a.m., while Plaintiff was driving to drop off his daughter, Officer Juan Rodriguez showed up and was driving parallel to Plaintiff being sarcastic.

23.   On August 21st, 2008, when Plaintiff was coming back from dropping off his daughter at school Plaintiff had Officer Juan Rodriguez in the opposite direction.  Officer Juan Rodriguez is not assigned to Miami Lakes K-8 Center and/or Police Office is not located anywhere surrounding the school before mentioned.

24.   There are two (2) Officers assigned to the school, Officer Kenny Torres and Officer Carlos Ortiz, who impartially do their job to the best they can.  They

represent the hard work of the Police Officers that day by day do their job without being bias.

25.  On September 2008, Plaintiff's former Attorney, Joseph Glick, sent a letter to the Miami Dade Police Department regarding all the issues with some Police Officers in Miami Lakes, especially with Officer Juan Rodriguez.   No response was received from the Miami Dade Police Department.

26.   On October 2008, Plaintiff along with his wife went with former Attorney Joseph Glick to a meeting with Commander Frank Bocanegra.   In this meeting were also present Sgt. Eduardo Ruesga, and Captain J. Alongi.   Plaintiff's attorney requested them to speak with Officer Juan Rodriguez in order to stop the harassment that Plaintiff and his family were victims of.   On November 2008 Plaintiff filed a complaint with the Commission on Ethics and nothing happen.

27.   On February 26, 2009, Plaintiff and his wife went to pick up their daughter at school.  As Plaintiff was approaching the school he noticed that Officer Juan Rodriguez was there.   His patrol car was parked in a private residential driveway while he was standing outside Officer Torres's patrol car speaking with him.  Plaintiff got off the car and took pictures of Officer Juan Rodriguez and this seemed to have bothered him and he went to his car back up and drove fast to where the Plaintiff's car was.

28.   Plaintiff was asked by Officer Juan Rodriguez to move his car and Plaintiff move his car forward.  Officer Juan Rodriguez wrote a citation for being parked in the no parking space, where there were 2 other cars also parked, without the drivers, and Officer Juan Rodriguez wrote the citation only for the Plaintiff.

29.   When Officer Juan Rodriguez was writing the citation he stated to Plaintiff that "the complaints he filed with the Commission on Ethics was not going to do anything to him", and when Plaintiff's wife stated to him that "he should not be wearing a badge" and that "he makes look the rest of the officers bad" Officer Juan Rodriguez stated "if you want I would remove my gun".  Officer Juan Rodriguez stated there arguing finishing writing the citation and stating that all those complaints Plaintiff will not get anything and that Plaintiff will not be able to prove anything.

30.   Plaintiff's wife called the Miami Lakes Police Station and requested a Supervisor to write a complaint against Officer Juan.  Sgt. Barasch came and wrote the complaint.

31.   Officer Juan Rodriguez stated to Plaintiff and his wife that if they asked to the Police Department to remove Officer Juan Rodriguez from Miami Lakes they will be doing him a favor.

32.   On December 2010, Plaintiff was leaving the Condominium Complex, and as he pulled into the main road, MIAMI LAKES DR., noticed that Officer

Juan Rodriguez was in back of him.  Officer Juan Rodriguez proceeded to drive parallel to Plaintiff and started to make signs with his while driving, harassing and intimidating Plaintiff and his daughter.

33.  Plaintiff's minor daughter arrived at school in fear of why Officer Juan Rodriguez was following them, harassing them, making signs, fists, etc. with his hands and did not care about the minor child that was inside the car.

34.  Plaintiff started to take pictures of Officer Juan Rodriguez and Officer Rodriguez seemed to be upset because of the pictures and continued with the sarcasm, harassment and intimidation.  Plaintiff proceeded to make a complaint with the Miami Dade Internal Affairs which ended up again as a contact report.

**WHEREFORE**, Plaintiff respectfully requests that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

13

## COUNT IV
## ABUSE OF POWER, HARASSMENT, INTIMIDATION, STALKING AGAINST OFFICER BENJAMIN RIVERA

35.   Plaintiff realleges paragraphs 1 through 9 above as if fully incorporated herein, further alleges:

36.   On April 3rd, 2009, Plaintiff and his wife went to drop off their daughter at school.  Because of the lack of parking spaces Plaintiff pulled in the driveway of a friend of his who lives across the school, and has authorized Plaintiff to the use of her driveway at any moment needed.  His wife and daughter got off the car and walked across to take his daughter inside the school.  Plaintiff had driven out from the driveway and went toward Miami Lakeway South and made a Left to go East.

37.   Plaintiff turned Right on the Congregational Church and inside the church Plaintiff made a U-turn to comeback to the school and pick up his wife.

38.   In his way back he noticed Officer Benjamin Rivera outside the school standing up in the sidewalk next to the school.  His wife started to walk across the street.  Plaintiff's noticed that Officer Rivera was screaming to a group of parents that were crossing the street and then when Plaintiff was approaching where Officer Rivera, Officer Rivera started screaming toward him.   Plaintiff had windows up and did not hear what Officer Rivera was saying.

39.   Plaintiff lowered the window and drove slowly trying to hear and understand what Officer Rivera was saying.  When Plaintiff came closer to him, Officer Rivera told Plaintiff to park that he was going to write a citation for him.

40.   Plaintiff pulled over the approached of the other entrance to the Congregational Church, and Officer Rivera wrote the citation for "Parking – Posted/Prohibited", 316.1945(1)(A)(10).   License Plate in the citation had a different letter from the Plaintiff's plate.

41.   10 minutes after Plaintiff received the citation from Officer Rivera, Plaintiff arrived home and a few minutes later Officer Rivera was outside the building where the Plaintiff resides.

42.   Plaintiff's wife went outside to take a picture to document the police presence outside their apartment.  Officer Rivera turned and noticed that Plaintiff's wife had taken and picture and scream at her as to if she wanted his badge number and she answered yes.  Officer Rivera gave her his badge number and then he screamed if she wanted the Internal Affairs phone number and she said no, she stated to Officer Rivera that she had that number already.

43.   Plaintiff requested a court date for this citation. Court date was for June 15th, 2009.

44.   At the Court Hearing, Officer Rivera had numerous cases.  Some of them were found guilty and some others the Hearing Officer Tanya J. Brinkley

15

said not guilty.  When it was Plaintiff's turn, Officer Rivera starting getting out of control and the Hearing Officer said that she was going to leave the case to the end of all the Hearings of that hour.

45.   When it was the Plaintiff's turn, Officer Rivera started by trying to change the Statute No., and then he said his version of what took place the day of April 3rd, 2009.  When it was Plaintiff's turn to speak, he objected to the lies Officer Rivera had stated and told the Hearing Officer what had happened that day. Also Plaintiff stated to the Hearing Officer that his wife, who was outside, was a witness to this case.  The Hearing Officer told Officer Rivera to show respect for the court and to treat Mr. Abella with respect too.  Many times she had to tell him to calm down because of the outburst he had.

46.  Officer Rivera stated to the Hearing Officer in one of his outbursts that "Gus" had filed many complaints against some Police Officers and Miami Lakes and also stated that "because of him is that I am at the school".

47.  The Hearing Officer stop Officer Rivera and told him that if this was something personal, and asked him not to call him "Gus"; to call him Mr. Abella, and also the Hearing Officer stated to Officer Rivera that if "Mr. Abella has all the right to file any complaints against some police officers if they have done wrong".

48.  Plaintiff's wife came inside and the Hearing Officer asked questions to her and also asked her to draw where she was drop off along with her daughter and

16

where was Officer Rivera standing and where was her husband positioned when she went across the street to wait for her husband.

49.  Plaintiff's wife answered all the questions and Officer Rivera started an outburst, and the Judge told him to calm down.   The Hearing Officer told Plaintiff's wife to sit down.

50.  The Hearing Officer in view of all the information that was given by Officer Rivera, Mr. Abella and his wife, told Mr. Abella that the Judgment was "not guilty", and to that instant Officer Rivera came out with another outburst screaming and stating that he wanted continuance and that he will bring witnesses, which it was denied by the Hearing Officer.

51.  The Hearing Officer told Mr. Abella and his wife that they can leave and pick up a copy of the Judgment.

52.  Officer Benjamin Rivera has also been part of the Police Officers that have been sent to park outside our porch almost on a daily basis.   From two (2) to (3) Police Officers were sent to be parked outside the Plaintiff's porch, backed up with their motors running toward our sliding door.

53.  Officer Rivera was ordered to be at school and then to come and parked outside Plaintiff's apartment.

54.   Officer Rivera was almost on a daily basis outside the school and outside the Plaintiff's apartment with the purpose to oppress, intimidate, harass and stalk Plaintiff and his family.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

### COUNT V

### VIOLATION OF CIVIL RIGHTS WHILE ACTING UNDER THE COLOR OF LAW 42 U.S.C. § 1983 AGAINST DEFENDANT OFFICER RICHARD BAEZ

55.  Plaintiff realleges paragraphs 1 through 9 above as if fully incorporated herein, further alleges:

56.      On September 19, 2009, Plaintiff's wife and his daughter were at home.  Plaintiff's daughter was doing homework in the living room and noticed that outside their porch a police car was backing up and that a few minutes later another police car back up.

57.  Plaintiff's daughter called her mom, who was in the bedroom, and told her about the police officers outside.  Plaintiff's wife proceeded to get her camera to take pictures of the police officers, who seem to be different from the ones that have been used to be outside their porch.  One police officer had already got off his car.

58.  When the other police officer got off his patrol car, Plaintiff's wife proceeded to take pictures of him.  The police officer then trespassed Plaintiff's property and came inside the porch to ask questions regarding the pictures that Plaintiff's wife had taken.

59.  Plaintiff's wife and daughter were in fear, nervous of the presence of the police officer not just outside their porch but outside their sliding door.  Plaintiff's daughter asked her mom why the police would send a couple of officers on a Saturday.  And why was that Officer in their property.

60.  Officer BAEZ at no moment requested permission to walk inside Plaintiff's property.  Officer BAEZ had no business inside the Plaintiff's property. Officer Baez was not authorized by Plaintiff's and/or his wife to come inside their property.

61.  Officer BAEZ had not right asking Plaintiff's wife about the picture she took from her living room to the cars and police officers that were parked outside their porch.

62.  Plaintiff's wife, shaking, nervous and in fear that even the camera was going to be taken away, showed Officer BAEZ that the battery had not sufficient battery and was not able to take the picture.

63.  The Police Department in Miami Lakes are aware that Plaintiff has 2 surveillance cameras outside in his porch pointing toward the parking lot, and that any activity outside is being captured by the cameras.   Also, Plaintiff has volunteered copy of videos when a resident had been attacked outside by a thief, also when a car has been stolen, and also when the tires of a car had been stolen and everything has been captured on the cameras.

64.  Plaintiff's wife called his supervisor and filed a complaint against him. When the supervisor listened to what took place she called an officer to come to write the report.  The Officer that came was the one that came earlier with Officer BAEZ.  The Officer did not receive the information from Plaintiff's wife but from the supervisor.  The statement in there is not accurate to what took place earlier that day.

65.  On September 21, 2009, when Plaintiff went to drop off his daughter, as soon as they were approaching the school, Plaintiff's daughter noticed that there was an additional police officer outside the school and that he was the same that had been just 2 days ago trespassing their property.  Plaintiff's wife confirmed her daughter's statement and Plaintiff took his camera out and took a picture of him.

20

66.   After dropping off Plaintiff's wife and daughter and keep driving, because of the lack of parking spaces, when Plaintiff came back to pick up his wife,  when Plaintiff was going to take another  picture Officer BAEZ came and pushed Plaintiff's camera toward Plaintiff's face and kept pushing inside the window.

67.   Defendant Officer Baez unlawfully and without probable cause walk toward Plaintiff's car in order to stop him from taking pictures of him while Plaintiff was engaged in the lawful exercise of his rights under the First Amendment.

68.   Defendant Officer Baez, while acting in his capacity as police officer and under color of law, did willfully, intentionally, and maliciously obstructed Plaintiff for the very purpose of depriving Plaintiff's right to take pictures in a public place.

69.   Defendant Officer Baez retaliated against Plaintiff by displaying anger and annoyance toward Plaintiff when Defendant Officer Baez came toward Plaintiff stopping him from taking pictures.   Defendant Officer Baez acted in retaliation because of the complaint that was filed against him a couple of days before.   Defendant Officer Baez retaliated against Plaintiff when he blocked the right that Plaintiff had of taking pictures in a public place.

70.   Defendant Officer Baez's Answers to Interrogatories did not deny his actions nor denied knowing the fact that the man taking the pictures was Plaintiff Abella.  Defendant Officer Baez knew before hand who Plaintiff Abella was.

71.   Plaintiff Abella had never seen before Defendant Officer Baez and he just got to know him when Plaintiff's daughter and wife told Plaintiff that this was the same police officer that stopped Plaintiff's wife from taking pictures of him.

72.   Defendant Officer Baez had knowledge before hand as to who Plaintiff Abella was and acted in violation of Plaintiff's Civil Rights retaliating against Plaintiff by coming now to Plaintiff's minor daughter's school where he is not assigned.

73.   Miami Lakes K-8 Center has 2 assigned police officers and also later on, Defendant Officer Benjamin Rivera stated in a Court proceeding that "because of Gus is that he is at this school".  (See Id. ¶ 46).

74.   Defendant Officer Baez was on September 21st, 2009 at this school, Miami Lakes K-8 Center, knowing that Plaintiff was going to drop off his daughter.   The purpose of his presence at this school represents retaliation, harassment, stalking with the purpose to cause pain, embarrassment, mental anguish and the reminder that Plaintiff was being watch and the police can do whatever they want.  Defendant Officer Baez knew that a complaint was filed against him and that did not stop him from continuing harassing and violating

22

Plaintiff's rights to take pictures in a public place to document that Defendant Officer Baez was now harassing at his daughter's school.

75.    The attitude, behavior and annoyance that Defendant Officer Baez displayed on September 19th, 2009 at Plaintiff's domicile was once again demonstrated 2 days later on September 21st, 2009 aggressively when Defendant Officer Baez displayed his anger, frustration and annoyance acting in retaliation for the complaint filed against him a couple of days before, walking toward plaintiff stopping him from taking pictures.

76.    Defendant Officer Baez did not cause any harm to Plaintiff's face but prevented Plaintiff to exercise his right of taking pictures.  Plaintiff stopped taking pictures because he was concerned what other retaliating actions Defendant Officer Baez was going to do to prevent Plaintiff to take pictures of him.

**WHEREFORE**, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority, and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

## COUNT VI

## ABUSE OF POWER, HARASSMENT, INTIMIDATION, TRESPASSING AGAINST DEFENDANT MAJOR FRANK BOCANEGRA

76.   Plaintiff realleges paragraphs 1 through 9 above as if fully incorporated herein, further alleges:

77.   Defendant BOCANEGRA did not take any effective action when Town Manager, Alex Rey, sent him an email on April 16, 2007 asking BOCANEGRA to "Please handle through the appropriate police procedures.  Send me a report with the conclusions".

78.   Plaintiff's wife requested thru public records on January 8, 2008, a copy of the report and conclusions that Town Manager request to BOCANEGRA and Plaintiff's wife received an email stating that "There is no record responsive to this request".  Copy attached as Exhibit "D".

79.   Plaintiff tried thru different approaches to put a stop to the intimidation, harassment, abuse of power, violation of civil rights, stalking that Officer Juan Rodriguez was doing to Plaintiff and his family. (See COUNTS II and III). Plaintiff had already sent an email, a letter, had meet with BOCANEGRA and by taking no action BOCANEGRA failed to properly discipline the misconduct of one of the officers that are under his supervision for the good of the residents of the Town of Miami Lakes.

80.   For 3 days was BOCANEGRA asking Plaintiff to come by his office and Plaintiff sent an email stating to him that as per his Attorney's advice he was declining to go and meet with him.

81.   Then Plaintiff's had a message in his cell phone to call Sgt. Ruesga to the Miami Lakes Police.  When Plaintiff called Sgt. Ruesga stated to Plaintiff that Captain Alongi, BOCANEGRA and him had review the Parking Citation and decided to rip off the citation.

82.  Copies of pictures of the police presence outside Plaintiff's porch and in the way to drop off and pick up Plaintiff's daughter to school are available upon request if necessary.


WHEREFORE, Plaintiff respectfully request that this Court declare that the actions of the Defendant, as alleged herein were taken under color of law, constitute an abuse of his authority and a violation of Plaintiff's civil rights under 42 U.S.C. 1983, and award ABELLA all available damages and relief, and all other monetary and equitable relief available as this Honorable Court deems just.

# **DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demand a jury trial as to all issues triable by a jury.

WHEREFORE, PLAINTIFF respectfully requests this Court to award:

A.  Reasonable and appropriate compensatory damages.

B.  Punitive damages against all Defendants.

C. Such other and further relief as this Court deems necessary and proper.

Respectfully Submitted,

GUSTAVO ABELLA

November  9th, 2012

7400 MIAMI LAKES DR.,
APT. D-108
MIAMI LAKES, FL 33014
CELL: 305-305-6622
Keepingmlml@yahoo.com

26

## CERTIFICATE OF SERVICE
Case No. 11-20152-cv-Altonaga/Simonton
United States District Court, Southern District of Florida

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by mail on November 9th, 2012, on the following counsel:

Dennis Kerbel
E-Mail: dkerbel@miamidade.gov
Brenda Kuhns Neuman
E-Mail: BJK@miamidade.gov
Assistant County Attorneys
Miami Dade County Attorney's Office
111 N.W. 1ST Street, Suite 2810
Miami Florida 33128
PH:  305-375-5151


Jeffrey L. Hochman, Esq.
E-mail: hochman@jambg.com
Marcos Martinez, Esq.
E-mail: Martinez@jambg.com
2455 E Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Ph: 954- 463-0111