**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

Case No.: 11-20152-CIV-ALTONAGA-BROWN

GUSTAVO ABELLA,

     Plaintiff,

vs.

OFFICER JUAN RODRIGUEZ, et al.,

    Defendants.

_____/

## PLAINTIFF'S FOURTH AMENDED COMPLAINT

### INTRODUCTION

1.     This is a civil rights action on behalf of Plaintiff GUSTAVO ABELLA (hereinafter "MR. ABELLA"), a civic activist, against Miami-Dade Police Officers assigned to the Town of Miami Lakes, FL., who used the power of their office to retaliate against MR. ABELLA for his advocacy criticizing the city and its policies and for MR. ABELLA's filing of complaints against certain Miami Lakes police officers and their supervisor.  In an effort to silence and discredit MR. ABELLA, the police department waged a campaign against the Abella family, which included threats, intimidation, and harassment.  These actions were taken to silence MR. ABELLA and to punish him for exercising his First Amendment rights.

2.     This action for declaratory and monetary damages is brought pursuant to 42 U.S.C. Sections 1983 and 1988, the First and Fourteenth Amendments to the United States Constitution, and under the laws of the State of Florida against former and current Miami Dade County police officers assigned to the Town Of Miami Lakes, FL.

Abella v. Officer Juan Rodriguez, et al.
Case No.: 11-20152-CIV

## JURISDICTION AND VENUE

3.      This action arises under the constitution and laws of the United States, particularly the First and Fourteenth Amendments to the United States Constitution.

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343, as a case arising under the laws of the United States and under 42 U.S.C. § 1983, as a case seeking to enforce rights and privileges secured by the laws of the United States and on the supplemental jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. Section 1367.

5.      Venue is proper in this district because it is where the events complained of occurred.

6.      All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute Chapter 768.

## THE PARTIES

7.      Plaintiff, GUSTAVO ABELLA, is an individual and a resident of Miami-Dade County, Florida.  MR. ABELLA is a citizen of the United States and a qualified and legally registered Florida voter.

8.      Defendant OFFICER JUAN RODRIGUEZ (hereinafter "OFFICER RODRIGUEZ") was at all times relevant to this complaint duly appointed and acting as a Miami-Dade police officer assigned to the Town of Miami Lakes, FL., acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Miami Dade County Police Department.  OFFICER RODRIGUEZ was also the Community Service Officer for the Town of Miami Lakes, FL., during the relevant time

period at issue. Defendant OFFICER RODRIGUEZ is being sued in his individual capacity as a police officer with the Miami Dade County Police Department.

9.      Defendant OFFICER BENJAMIN RIVERA (hereinafter "OFFICER RIVERA") was at all times relevant to this complaint duly appointed and acting as a Miami-Dade police officer assigned to the Town of Miami Lakes, FL., acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Miami Dade County Police Department.  Defendant OFFICER RIVERA is being sued in his individual capacity as a police officer with the Miami Dade County Police Department.

10.      Defendant OFFICER RICHARD BAEZ (hereinafter "OFFICER BAEZ") was at all times relevant to this complaint duly appointed and acting as a Miami-Dade police officer assigned to the Town of Miami Lakes, FL., acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Miami Dade County Police Department.  Defendant OFFICER BAEZ is being sued in his individual capacity as a police officer with the Miami Dade County Police Department.

11.      Defendant former Miami Lakes Police Major FRANK C. BOCANEGRA (hereinafter "MAJOR BOCANEGRA") was at all times relevant to this complaint duly appointed and acting as Major for the Miami Dade County Police Department assigned to the Town of Miami Lakes, FL., acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Miami Dade County Police Department.  Defendant MAJOR BOCANEGRA is being sued in his official and individual capacities.

Abella v. Officer Juan Rodriguez, et al.
                Case No.: 11-20152-CIV

12.     At all material times, and in all of their acts described hereto, Defendants were acting under color of state law and color of their authority as public officials and public employees.  At all times, Defendants were engaged in conduct that was the proximate cause of the violations of Plaintiffs federally protected rights, as more specifically described below.

## STATEMENT OF FACTS

13.     In February of 2007, MR. ABELLA, a resident of Miami Lakes, attended a town hall meeting hosted by the Town of Miami Lakes, FL. The purpose of the meeting was to discuss a proposed town ordinance involving the use and placement of commercial signs on the streets and thoroughfares of the Town of Miami Lakes.   At the meeting, MR. ABELLA expressed his dissent towards the proposed ordinance.

14.     In exercise of his First Amendment right to freely express his political views, MR. ABELLA placed a political sign on his truck, which stated: "Councilmember Nancy Simon wants to pollute Miami Lakes with signs."

15.     A few days after the Town Hall meeting, MR. ABELLA dropped his daughter off at the Miami Lakes K-8 Center located at 14250 NW 67th Ave in Miami Lakes, FL. While leaving the school parking lot, OFFICER RODRIGUEZ flagged MR. ABELLA to pull over and then ordered him to remove the political sign attached to his truck.

16.     When MR. ABELLA asked OFFICER RODRIGUEZ the reason for stopping him, OFFICER RODRIGUEZ responded that he was "ordered" to have MR. ABELLA remove the sign.  OFFICER RODRIGUEZ refused to name the person who ordered him to have MR. ABELLA remove the sign.

17.     OFFICER RODRIGUEZ threatened to issue MR. ABELLA a citation if he did not remove the sign.  MR. ABELLA refused to remove the sign from his truck despite being threatened by OFFICER RODRIGUEZ.

18.     Since the February 2007 Town Hall meeting and in retaliation for MR. ABELLA's exercise of his rights secured by the First Amendment to the United States Constitution, MR. ABELLA and his family have been repeatedly harassed and intimidated by Miami Dade County police officers assigned to the Town of Miami Lakes, FL, including Defendants OFFICER RODRIGUEZ, OFFICER BAEZ, OFFICER RIVERA, and their commanding officer, MAJOR BOCANEGRA.

19.     On or about March 13, 2007, MR. ABELLA and his wife attended another Town of Miami Lakes Town Hall meeting.   OFFICER RODRIGUEZ also attended the Town Hall meeting.  During this meeting, MR. ABELLA and his wife voiced their opinions about adult education courses and criticized the program coordinator for her treatment of parents at the Community Center West.

20.     The next day, March 14, 2007, OFFICER RODRIGUEZ issued a Watch Order for police presence coinciding with the days and times MR. ABELLA's daughter had ballet and martial arts class at the Community West Center.   According to the Town of Miami Lakes, FL, website, http://miamilakes-fl.gov/index.php, "[w]atch orders are a service that we provide for our town residents when you will be away for an extended period of time and would like an officer to periodically check your residence or business until your return."

21.     Shortly after receiving notice of the Watch Order, MR. ABELLA's wife emailed MAJOR BOCANEGRA, Town Manager Alex Rey, and Mayor Wayne Slaton, to ensure that proper procedures were followed when the Watch Order for the Community Center West

was issued.   In response, MR. ABELLA and his wife received an email from MAJOR
BOCANEGRA stating that all proper procedures were followed.   The following day, MR.
ABELLA's wife met with Town Mayor Wayne Slaton.   During this meeting, MR. ABELLA's
wife discussed the Watch Order with Mayor Slaton.   Mayor Slaton informed MR. ABELLA's
wife that the Watch Order was not in effect because the order was procedurally improper.

22.     On or about April 13, 2007, MR. ABELLA and his wife were dropping
their daughter off at school and noticed OFFICER RODRIGUEZ parked across the street from
the school.   MR. ABELLA pulled to the side of the school car line while his wife escorted their
daughter to the door of the school.   As MR. ABELLA waited for his wife to return, OFFICER
RODRIGUEZ walked over to where MR. ABELLA was parked and ordered him to move his
car.   MR. ABELLA was surrounded by other cars and could not move his car.   OFFICER
RODRIGUEZ issued MR. ABELLA a parking citation.

23.     On or about April 15, 2007, MR. ABELLA's wife sent an email to Robert
Parker, Director of the Miami Dade Police Department, and Alex Rey, Miami Lakes Town
Manager.  The email reported that OFFICER RODRIGUEZ ordered MR. ABELLA to remove a
political sign from his truck and had been harassing the Abella family at their daughter's school
and at Community Center West.

24.     The next day, on April 16, 2007, Town Manager Alex Rey forwarded the
complaint email to MAJOR BOCANEGRA and ordered MAJOR BOCANEGRA to "[p]lease
handle through appropriate police procedures. Send me a report with the conclusions."

25.      On or about January 8, 2008, MR. ABELLA's wife requested a copy of
the report and was told via email that "there is no record responsive to this request."

26.     On or about January 31, 2008, OFFICER RODRIGUEZ appeared as a witness in a hearing for a different matter.  During that hearing, OFFICER RODRIGUEZ was asked who ordered him to tell MR. ABELLA to remove the political sign from his truck. OFFICER RODRIGUEZ responded that he "did not remember."

27.     On or about June 3, 2008, OFFICER RODRIGUEZ appeared outside MR. ABELLA's residence and followed the Abellas as they drove their daughter to school.   Later that day, MR. ABELLA contacted his attorney, Mr. Joseph Glick, who later contacted MAJOR BOCANEGRA and informed him of repeated incidents of harassment carried out by OFFICER RODRIGUEZ.

28.      On or about June 4, 2008, OFFICER RODRIGUEZ again followed MR. ABELLA as he and his wife drove their daughter to school.

29.      On June 5, 2008, MR. ABELLA sent a letter to MAJOR BOCANEGRA detailing his complaints against OFFICER RODRIGUEZ.  A copy of this letter was also sent to Major David Rifkin of Internal Affairs, Town of Miami Lakes Mayor Wayne Slaton, and Town of Miami Lake Town Manager Alex Rey.    MAJOR BOCANEGRA failed to contact MR. ABELLA or the Abella's attorney in response to this letter.

30.     On August 12, 2008, MAJOR BOCANEGRA ordered an inferior officer, Officer Salazar, to issue MR. ABELLA a parking ticket while MR. ABELLA was briefly parked outside of the Town of Miami Lakes City Hall building while picking up public records he had requested.   While entering City Hall, MR. ABELLA saw MAJOR BOCANEGRA in the hallway.   MAJOR BOCANEGRA taunted MR. ABELLA by pointing and laughing at MR. ABELLA as he waited for an elevator.  Within a few minutes MR. ABELLA had retrieved his records and left the building.

Abella v. Officer Juan Rodriguez, et al.
                                                    Case No.: 11-20152-CIV

31.     As MR. ABELLA approached his car Officer Salazar was in the process of writing a parking ticket.   Officer Salazar stated that he was ordered by MAJOR BOCANEGRA to issue the parking ticket and that "Bocanegra is watching until I finish giving you the ticket."   Officer Salazar told MR. ABELLA that MAJOR BOCANEGRA was in the parking lot watching as he wrote out the ticket.    When MR. ABELLA returned to the police station to contest the ticket he was told to "take it up with Frank Bocanegra."

32.     About an hour after the ticket was issued, MAJOR BOCANEGRA called MR. ABELLA and requested that he come to his office to discuss the parking ticket.   On the advice of his attorney, MR. ABELLA emailed MAJOR BOCANEGRA and declined the meeting.

33.      On August 13, 2008, MR. ABELLA received a call informing him that MAJOR BOCANEGRA had reviewed the ticket and had decided to tear it up.

34.     On or about August 20, 2008, OFFICER RODRIGUEZ followed and then began to drive parallel to MR. ABELLA's car, intimidating the Abella family with hand gestures while MR. ABELLA and his wife drove their daughter to school.

35.     On or about August 21, 2008, MR. ABELLA saw OFFICER RODRIGUEZ driving next to the Miami Lakes K-8 Center as he was dropping his daughter off at school.

36.     On September 16, 2008, MR. ABELLA's wife saw OFFICER RODRIGUEZ parked in the shopping center parking lot immediately across the street from the Abella residence.

37.     On September 17, 2008, MR. ABELLA again saw OFFICER RODRIGUEZ parked in the shopping center parking lot immediately across the street from the Abella residence.

38.     Once again, on September 18, 2008, MR. ABELLA saw OFFICER RODRIGUEZ in the parking lot immediately across the street from the Abella residence as he entered the shopping center.

39.     In September of 2008, MR. ABELLA and his wife, accompanied by their attorney, Mr. Glick, met with MAJOR BOCANEGRA.  During this meeting Mr. Glick requested that Major Bocanegra take action to stop OFFICER RODRIGUEZ's ongoing harassment of the Abella family.

40.     In November 2008, MR. ABELLA filed a complaint against OFFICER RODRIGUEZ with the Commission on Ethics & Public Trust.  The complaint reported several incidents of harassment of MR. ABELLA and his family by OFFICER RODRIGUEZ.  The Commission returned a Memorandum on January 29, 2009, dismissing the complaint against OFFICER RODRIGUEZ on the grounds that the complaint was not legally sufficient to "rise to the level of an ethics violation."

41.     On or about February 17, 2009, at about 2:45 p.m., MR. ABELLA and his wife parked in front of the Miami Lakes K-8 Center and waited to pick their daughter up from school. While waiting, the Abellas noticed OFFICER RODRIGUEZ was speaking with Officer Torres in the school parking lot. Upon noticing OFFICER RODRIGUEZ, MR. ABELLA's wife began photographing his presence at the school.  When OFFICER RODRIGUEZ noticed MR. ABELLA's wife taking photos, he quickly drove over to the Abella's car and aggressively

Abella v. Officer Juan Rodriguez, et al.
                                                        Case No.: 11-20152-CIV

ordered MR. ABELLA to move his car.  OFFICER RODRIGUEZ's demeanor intimidated MR.

ABELLA's wife to cease taking photos.

42.     Next, OFFICER RODRIGUEZ issued MR. ABELLA a citation for

parking in a no-parking space.  There were two other cars parked in the same area. OFFICER

RODRIGUEZ, however, only cited MR. ABELLA.

43.     While writing the citation, OFFICER RODRIGUEZ and MR. ABELLA

exchanged words.  OFFICER RODRIGUEZ stated, "ethics wasn't going to do anything about

his [MR. ABELLA's] previous complaints against him."  MR. ABELLA's wife responded by

stating that OFFICER RODRIGUEZ "makes the other hardworking officers look bad" and that

he "shouldn't be wearing a badge."    In response to Mrs. Abella's statements, OFFICER

RODRIGUEZ placed his hand on his gun and stated "I can remove my gun if you would like."

44.     MR. ABELLA and his wife then called the Miami Lakes Police Station to

file a complaint against OFFICER RODRIGUEZ.  Sergeant Barash filled out and filed a

preliminary complaint with the Miami Dade County Professional Compliance Bureau.  On April

3, 2009, the Bureau issued a Memorandum in response to the preliminary complaint.  The

Memorandum stated that no further action was warranted in response to the complaint because

OFFICER RODRIGUEZ denied making threatening statements to the Abellas.  The report filed

by Sergeant Barash did not accurately convey MR. ABELLA or his wife's narrative of the

incident with OFFICER RODRIGUEZ.

45.     On or about April 3, 2009, MR. ABELLA and his wife were trying to drop

their daughter off at school but there were no available parking spaces.  Due to the lack of

parking, MR. ABELLA pulled into the driveway of a friend who lives across the street from the

school and allows the Abellas to use the driveway at any time needed.  MR. ABELLA's wife and

her daughter exited the car in the driveway and walked across the street to the school.  About ten (10) minutes later, while MR. ABELLA drove back to the school to pick up his wife, OFFICER RIVERA waved MR. ABELLA into the entrance of a church parking lot located across the street from the school.  OFFICER RIVERA ordered MR. ABELLA to park his car and then issued him a parking citation for illegally parking.

46.    About ten (10) minutes after OFFICER RIVERA issued the citation, MR. ABELLA arrived home.  A few minutes later, OFFICER RIVERA arrived and parked in front of the Abella residence for an extended period of time.

47.    In an effort to document the continued police harassment and presence outside her home, MR. ABELLA's wife began photographing OFFICER RIVERA.  Upon noticing MR. ABELLA's wife taking photos, OFFICER RIVERA screamed at her and asked if she wanted his badge number and the phone number for Internal Affairs in a taunting manner. MR. ABELLA's wife was frightened by OFFICER RIVERA's aggressive behavior and stopped taking photos out of fear that OFFICER RIVERA would take her camera by force.

48.    MR. ABELLA challenged the parking citation issued by OFFICER RIVERA on April 3, 2009, and requested a court date for the citation.  On June 15, 2009 a hearing was held before Hearing Officer Tanya J. Brinkley.  During the hearing, OFFICER RIVERA materially misrepresented how the events unfolded on April 3, 2009.  Additionally, OFFICER RIVERA was visibly angered at the hearing.  OFFICER RIVERA claimed he was upset because "Gus filed complaints against Miami Lakes police officers" and "it is because of him [MR. ABELLA] that I am at the school." OFFICER RIVERA was repeatedly asked by the Court to calm down and show respect for both the Court and MR. ABELLA.   The hearing concluded with the Court finding MR. ABELLA not guilty.

49.     On or about September 19, 2009, OFFICER BAEZ parked his patrol car in front of the Abella home.  There was another officer accompanying OFFICER BAEZ in the patrol car.   After parking, OFFICER BAEZ approached the Abella home uninvited and without legitimate purpose or cause.   While OFFICER BAEZ approached the Abella's home, MR. ABELLA's wife attempted to take pictures to document police presence on the property.  Once at the sliding glass door of the Abella's side porch, OFFICER BAEZ began to question MR. ABELLA's wife as to why she was taking pictures.  MR. ABELLA's wife and their young daughter felt afraid and intimidated after this encounter with OFFICER BAEZ and as a result ceased taking pictures of OFFICER BAEZ.

50.     Later that day, MR. ABELLA and his wife called the Miami Dade Police Department to report OFFICER BAEZ's conduct and requested that an officer come to their house to file a police report of the incident.   Sergeant Taboada responded and shortly thereafter arrived at the Abella residence.  A few minutes after Sergeant Taboada arrived, the officer that accompanied OFFICER BAEZ to the Abella residence earlier that day arrived and parked in front of the Abella residence.  The police report does not accurately portray how the events unfolded and neither MR. ABELLA's nor his wife's statement or narrative were ever taken or recorded.

51.     On or about September 21, 2009, MR. ABELLA and his wife were dropping their daughter off at school when their daughter noticed and recognized OFFICER BAEZ from the incident at the Abella home a few days before.  MR. ABELLA quickly took a picture of OFFICER BAEZ.  MR. ABELLA's wife and daughter exited the car, at which time MR. ABELLA drove off because he could not find parking.

Abella v. Officer Juan Rodriguez, et al.
                                                                     Case No.: 11-20152-CIV

52.     When MR. ABELLA returned to pick up his wife, he parked his car and started photographing OFFICER BAEZ again.  At this time, OFFICER BAEZ approached the Abella's car and aggressively pushed the camera into MR. ABELLA's face to prevent him from taking pictures.  MR. ABELLA, fearing physical violence or other retaliation, stopped taking photos of OFFICER BAEZ.

53.     On or about December 2, 2010, OFFICER RODRIGUEZ drove parallel to MR. ABELLA and his wife as they drove their daughter to school.  On this particular occasion, OFFICER RODRIGUEZ aggressively made intimidating facial expressions and hand gestures toward MR. ABELLA and his family as he accelerated and decelerated recklessly around MR. ABELLA's vehicle.   OFFICER RODRIGUEZ's aggressive and intimidating actions on December 2, 2010, caused the Abella family, particularly their young daughter, to feel unsafe at school and fearful of future retaliation from OFFICER RODRIGUEZ and other police officers.

54.     Later that day, MR. ABELLA called Sergeant Soto, one of OFFICER RODRIGUEZ'S superior officers, and explained the dangerous encounter with OFFICER RODRIGUEZ on the roads of Miami Lakes that morning.  That same day, MR. ABELLA's wife emailed Miami Dade County Police Department Director, James Loftus, and the Professional Compliance Bureau to report OFFICER RODRIGUEZ's reckless harassment earlier that morning.  To the best of MR. ABELLA's knowledge, no action was taken to discipline OFFICER RODRIGUEZ in response to MR. ABELLA or his wife's phone call or email.

55.     On April 9, 2012, OFFICER RIVERA arrived at the shopping center located at 18400 NW 75th Place in Miami Gardens.  As driving instructors, MR. ABELLA and his wife frequently visit the shopping center when bringing students to the Florida Driver's License Office located at that address. While in the shopping center parking lot, OFFICER

RIVERA drove back and forth in front of the area where MR. ABELLA was standing. Eventually, OFFICER RIVERA exited his patrol car and walked towards MR. ABELLA. OFFICER RIVERA stood near MR. ABELLA and stared at MR. ABELLA in an intimidating manner.

56.     On or about the morning of May 18, 2012, MR. ABELLA's car was parked in his assigned parking space at his apartment complex.  The apartment complex has over 200 parking spaces, including 30-40 visitor spaces.   As MR. ABELLA walked towards his car OFFICER RIVERA sped quickly into the parking lot and parked his patrol car directly next to MR. ABELLA's drivers side door and stared at MR. ABELLA in an intimidating fashion. OFFICER RIVERA remained in his parked patrol car for over an hour.

57.     On May 18, 2012, MR. ABELLA's wife sent an email to Miami Dade Police Department Director, James Loftus, in regard to OFFICER RIVERA's harassing conduct and requested that Director Loftus do something to prevent the ongoing harassment of the Abella family by Miami Dade County police officers assigned to the Town of Miami Lakes, FL.  The email also detailed OFFICER RODRIGUEZ's ongoing harassment of the Abella family.

58.     MR. ABELLA, his wife, and their young daughter have been traumatized by years of police harassment and intimidation.  The Abella family feels unsafe in their home, neighborhood, and while driving on the streets of Miami Lakes due to years of ongoing and systematic police retaliation in response to the MR. ABELLA's exercise of his rights secured by the First Amendment to the United States Constitution.

## COUNT I
## Allegations against Officer Juan Rodriguez

(42 U.S.C. § 1983 Against Defendant OFFICER RODRIGUEZ, Individually for violation of the
First Amendment)

59.      MR. ABELLA repeats and realleges paragraphs 1 through 58, and
incorporates them by reference herein.

60.      This cause of action is brought by MR. ABELLA against Defendant
OFFICER RODRIGUEZ, in his individual and official capacity, for interfering with MR.
ABELLA's constitutional right of free speech as guaranteed by the First Amendment to the
United States Constitution.

61.      The violation of MR. ABELLA's First Amendment rights to free speech
constitutes irreparable harm.

62.      At all relevant times, OFFICER RODRIGUEZ was acting in the course
and scope of his duties as a Miami Dade County police officer assigned to the Town of Miami
Lakes, FL.

63.      While acting under color of law, in February 2007, OFFICER
RODRIGUEZ, personally deprived MR. ABELLA of his First Amendment right to freedom of
speech and political expression when OFFICER RODRIGUEZ ordered MR. ABELLA to
remove a political sign from his vehicle and threatened to cite MR. ABELLA if he did not
comply with the order.

64.      By ordering MR. ABELLA to remove the sign from his truck under threat
of citation, OFFICER RODRIGUEZ directly suppressed MR. ABELLA's speech in violation of
the First Amendment to the United States Constitution.

65.      Even though MR. ABELLA never removed the sign from his vehicle,
OFFICER RODRIGUEZ's threat to issue a citation was an ultimatum in violation of MR.

ABELLA's First Amendment rights and is sufficient to demonstrate an injury and would likely deter a person of ordinary firmness from the exercise of their First Amendment rights.

66.     OFFICER RODRIGUEZ's actions were taken to unlawfully chill MR. ABELLA's First Amendment right to freely express his political opinions.

67.     Additionally, OFFICER RODRIGUEZ's actions did not reasonably advance a legitimate correctional goal.

68.     In the years since the February 2007 Town Hall meeting, OFFICER RODRIGUEZ has repeatedly harassed and intimidated MR. ABELLA and his family in retaliation for MR. ABELLA's conviction in the expression of his political opinions, reporting OFFICER RODRIGUEZ's misconduct to his superior officers, and photographing OFFICER RODRIGUEZ in public places.

69.     OFFICER RODRIGUEZ has repeatedly harassed MR. ABELLA and his family by continually showing up at the Abella's daughter's school, outside the Abella residence, and in the shopping center parking lot across the street from the Abella residence.  OFFICER RODRIGUEZ's unlawful retaliatory acts of harassment and intimidation caused MR. ABELLA harm and he is entitled to declaratory judgment, compensatory and punitive damages, and such other relief that the Court deems appropriate under 28 U.S.C § 2202, against OFFICER RODRIGUEZ for interference with his First Amendment rights.

## COUNT II
### Allegations Against Officer Richard Baez
(42 U.S.C. § 1983 Against Defendant OFFICER BAEZ, Individually, for violation of the First Amendment)

70.     MR. ABELLA repeats and realleges paragraphs 1 through 58, and incorporates them by reference herein.

71.     This cause of action is brought by MR. ABELLA against Defendant OFFICER BAEZ, in his individual and official capacity, for interfering with MR. ABELLA's constitutional rights of free speech as guaranteed by the First Amendment to the United States Constitution.

72.     The violation of MR. ABELLA's First Amendment right to free speech constitutes irreparable harm.

73.     At all relevant times, OFFICER BAEZ was acting in the course and scope of his duties as a Miami Dade County Police Officer assigned to the Town of Miami Lakes, FL.

74.      On or about September 21, 2009, OFFICER BAEZ directly violated MR. ABELLA's First Amendment right to photograph police in public places.

75.     On or about September 21, 2009, MR. ABELLA photographed OFFICER BAEZ at the Miami Lakes K-8 Center.  When OFFICER BAEZ noticed MR. ABELLA taking photos, he approached the Abella's car and aggressively pushed the camera into MR. ABELLA's face to prevent him from taking pictures.   MR. ABELLA, fearing physical violence or other retaliation, stopped taking photos of OFFICER BAEZ. Such aggression from a police officer would likely deter a person of ordinary firmness from the exercise of their First Amendment rights.

76.     OFFICER BAEZ was at the Miami Lakes K-8 Center on September 21, 2009, for the purpose of harassing and intimidating MR. ABELLA and his family.  OFFICER BAEZ is not one of the safety officers assigned to the Miami Lakes K-8 Center.

77.     OFFICER BAEZ's actions on September 21, 2009, were taken in retaliation for the complaint MR. ABELLA's filed against OFFICER BAEZ two days earlier on September 19, 2009.

78.     OFFICER BAEZ's unlawful retaliatory acts directly deprived MR. ABELLA of his First Amendment right to photograph police officers in public places and to file complaints against government conduct.

79.     OFFICER BAEZ's actions had the unlawful chilling effect on MR. ABELLA's First Amendment right to photograph police in public places as MR. ABELLA ceased taking photos.

80.     Additionally, OFFICER BAEZ's actions did not reasonably advance a legitimate correctional goal.

81.     OFFICER BAEZ's unlawful retaliatory acts of harassment and intimidation caused MR. ABELLA harm and he is entitled to declaratory judgment, compensatory and punitive damages, and such other relief that the Court deems appropriate under 28 U.S.C § 2202, against OFFICER BAEZ for interference with his First Amendment rights.

### COUNT III
### Allegations Against Officer Benjamin Rivera
(42 U.S.C. § 1983 Against Defendant OFFICER RIVERA, Individually, for violation of the First Amendment)

82.     MR. ABELLA repeats and realleges paragraphs 1 through 58, and incorporates them by reference herein.

83.     OFFICER RIVERA personally participated in the pattern of harassment and intimidation inflicted upon MR. ABELLA since the February 2007 Town Hall meeting when he issued MR. ABELLA a parking citation on April 3, 2009.

84.     MR. ABELLA challenged the citation and at the June 15, 2009, hearing OFFICER RIVERA claimed he was upset because "Gus filed complaints against Miami Lakes police officers" and "it is because of him [MR. ABELLA] that I am at the school."

85.     OFFICER RIVERA issued MR. ABELLA a parking citation and followed him home on April 3, 2009, for the purpose of harassing and intimidating MR. ABELLA and his family in retaliation for MR. ABELLA's reporting police misconduct and filing complaints against several police officers assigned to the Town of Miami Lakes, FL.   Such aggression from a police officer would likely deter a person of ordinary firmness from the exercise of their First Amendment rights.

86.     OFFICER RIVERA's unlawful retaliatory acts were taken in an attempt to intimidate MR. ABELLA into refraining from reporting police misconduct in the future.

87.     OFFICER RIVERA's actions were an unlawful attempt to chill MR. ABELLA's First Amendment right to report police misconduct.

88.     Additionally, OFFICER RIVERA's actions did not reasonably advance a legitimate correctional goal.

89.     OFFICER RIVERA's unlawful retaliatory acts of harassment and intimidation caused MR. ABELLA harm and he is entitled to a declaratory judgment, compensatory and punitive damages, and such other relief that the Court deems appropriate under 28 U.S.C § 2202, against OFFICER RIVERA for interference with his First Amendment rights.

### COUNT IV
### Allegations Against Major Frank C. Bocanegra
(42 U.S.C. § 1983 Against Defendant MAJOR BOCANEGRA, Individually and in his Official Capacity, for Policy to Retaliate against MR. ABELLA and to Suppress Speech)

90.     MR. ABELLA repeats and realleges paragraphs 1 through 58, and incorporates them by reference herein.

91.     This cause of action is brought by MR. ABELLA against Defendant MAJOR BOCANEGRA in his individual and official capacity, for interfering with MR.

ABELLA's constitutional right of free speech as guaranteed by the First Amendment to the United States Constitution.

92.     MAJOR BOCANEGRA has employed a policy of deliberate indifference to the repeated violations of MR. ABELLA's civil rights by officers under MAJOR BOCANEGRA's control or supervision.  MAJOR BOCANEGRA was a supervisor of many police officers assigned to the Town of Miami Lakes, FL., including Defendants OFFICER RODRIGUEZ, OFFICER BAEZ, and OFFICER RIVERA.

93.     In addition, MAJOR BOCANEGRA has violated MR. ABELLA's First Amendment rights by personally participating in the ongoing harassment of MR. ABELLA.

## A. DELIBERATE INDIFFERENCE TO CONSTITUTIONAL VIOLATIONS

94.     MAJOR BOCANEGRA repeatedly employed a policy of deliberate indifference to MR. ABELLA's repeated complaints against MAJOR BOCANEGRA's subordinate officers and has failed to discipline or prevent their misconduct.

95.     MAJOR BOCANEGRA had actual and constructive knowledge that his subordinates were repeatedly acting unlawfully by harassing MR. ABELLA and his family in retaliation for MR. ABELLA's expression of his First Amendment rights.

96.     Since April of 2007, MAJOR BOCANEGRA has consistently failed to take action in response to MR. ABELLA's complaint letters and emails, and has thereby acquiesced to the pattern of harassment inflicted upon MR. ABELLA and his family by police officers under MAJOR BOCANEGRA's command.

97.     To the best of MR. ABELLA's knowledge MAJOR BOCANEGRA has taken no meaningful action in response to their repeated complaints of officer misconduct against OFFICER RODRIGUEZ or any other officer named as a Defendant in this action.

**B. PERSONAL PARTICIPATION**

98.     On August 12, 2008, MAJOR BOCANEGRA personally violated MR. ABELLA's First Amendment rights when he ordered Officer Salazar, an inferior officer, to issue MR. ABELLA a parking ticket while MR. ABELLA was parked outside of the Town of Miami Lakes City Hall.

99.     When MAJOR BOCANEGRA ordered a subordinate officer to issue MR. ABELLA a parking citation he personally participated in the ongoing pattern of harassment and intimidation which MR. ABELLA has been subjected to since the February 2007 Town Hall meeting.

100.    MAJOR BOCANEGRA's actions on August 12, 2008, were taken in retaliation for MR. ABELLA's filing of lawsuits and complaints against city officials and Miami Dade County police officers assigned to the Town of Miami Lakes, FL., and for MR. ABELLA's expression of his political beliefs.

101.    MAJOR BOCANEGRA has caused MR. ABELLA harm by displaying an attitude of deliberate indifference to MR. ABELLA's repeated complaints of officer misconduct *and* has personally participated in the ongoing pattern of harassment and retaliation that has violated MR. ABELLA's civil rights.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff, MR. ABELLA, hereby demands a jury trial of all issues so triable.


**WHEREFORE**, Plaintiff, MR. ABELLA, respectfully requests this Court:

    **A.** Enter a judgment in favor of Plaintiff MR. ABELLA, and against Defendants, OFFICER RODRIGUEZ, OFFICER BAEZ, OFFICER RIVERA, and MAJOR BOCANEGRA;

Abella v. Officer Juan Rodriguez, et al.
                                        Case No.: 11-20152-CIV

**B.** Enter a declaratory judgment that the actions of Defendants, OFFICER RODRIGUEZ, OFFICER BAEZ, OFFICER RIVERA, and MAJOR BOCANEGRA, violated Plaintiff MR. ABELLA's rights secured by the First Amendment to the United States Constitution;

**C.** Award Plaintiff MR. ABELLA appropriate compensatory damages against Defendants, OFFICER RODRIGUEZ, OFFICER BAEZ, OFFICER RIVERA, and MAJOR BOCANEGRA;

**D.** Award Plaintiff MR. ABELLA punitive damages against Defendants, OFFICER RODRIGUEZ, OFFICER BAEZ, OFFICER RIVERA and MAJOR BOCANEGRA for knowing violation of MR. ABELLA's constitutional rights secured under the First Amendment to the United States Constitution;

**E.** Award Plaintiff MR. ABELLA's counsel reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of the law; and

**F.** Grant Plaintiff MR. ABELLA any other and further relief as this Court deems just and proper under the circumstances.

Dated:  January 31, 2014                    Respectfully submitted:

                                            s/Gregory A. Samms_
                                            Gregory A. Samms, Esq.
                                            *Lead Attorney for Plaintiff*
                                            FL Bar No.: 438863
                                            225 Alcazar Avenue
                                            Coral Gables, FL 33134
                                            FL Bar No.: 438863
                                            Tel:  (786) 953-5802
                                            Fax:  (786) 513-3191
                                            Email: sammslaw@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that an original and a true and correct copy of the foregoing Plaintiff's Fourth Amended Complaint was delivered under the auspices of CM/ECF to all parties of record on this 31st day of January, 2014.

                                            s/Gregory A. Samms_
                                            Gregory A. Samms, Esq.
                                            *Lead Attorney for Plaintiff*

FL Bar No.: 438863
225 Alcazar Avenue
Coral Gables, FL 33134
FL Bar No.: 438863
Tel:  (786) 953-5802
Fax:  (786) 513-3191
Email: sammslaw@gmail.com

Abella v. Officer Juan Rodriguez, et al.
                                     Case No.: 11-20152-CIV